122 T.C. No. 2

UNITED STATES TAX COURT

GWENDOLYN A. EWING, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1940-01.                    Filed January 28, 2004.

After submitting an application to and receiving an adverse determination from respondent (R), petitioner (P) petitioned this Court to seek our determination whether she is entitled to relief from joint liability under sec. 6015(f), I.R.C.

R contends that: (1) In making our determination, we may not consider evidence introduced at trial which was not included in the administrative record; and (2) whether or not our review is limited to R's administrative record, P is not entitled to equitable relief under sec. 6015(f), I.R.C.

Held: Our determination whether P is entitled to relief under sec. 6015(f), I.R.C., is made in a trial de novo; thus, we may consider matter raised at trial which was not included in the administrative record.

Held, further, P is entitled to equitable relief under sec. 6015(f), I.R.C.

Karen L. Hawkins, for petitioner.

Thomas M. Rohall, for respondent.

COLVIN, Judge:  Respondent determined that petitioner is not entitled to relief from joint liability for tax under section 6015(f) for 1995.  Petitioner filed a petition under section 6015(e)(1) seeking our determination whether she is entitled to relief under section 6015(f).

The issues for decision are:[1]

1.   Whether, in determining petitioner's eligibility for relief under section 6015(f), we may consider evidence introduced at trial which was not included in the administrative record.  We hold that we may.

2.   Whether petitioner is entitled to relief from joint liability for tax under section 6015(f).  We hold that she is.

Section references are to the Internal Revenue Code in effect for the applicable years.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

---

[1] We have previously decided that we have jurisdiction in this case.  Ewing v. Commissioner, 118 T.C. 494 (2002).

A.   Petitioner and Petitioner's Husband

1.   Petitioner

Petitioner resided in Martinez, California, when she filed her petition.  She married Richard Wiwi (Mr. Wiwi) on September 9, 1995.  At the time of trial, they were still married and living together.

Petitioner is a licensed clinical laboratory scientist.  In 1995, she worked full time for the Blood Bank of Alameda/Contra Costa Counties as a medical technologist and was eligible for various employee benefits (not described further in the record). Later in 1995, the blood bank changed her position to part time. From 1997 to 1999, petitioner was employed in two temporary medical technologist positions, and she received no employee benefits.

2.   Petitioner's Husband

In 1995, Mr. Wiwi was the sole proprietor of a financial services business.  He was licensed to trade securities and sell insurance.  Petitioner knew about his business, but she did not know how much he earned.  He concealed from her the fact that he had prior financial obligations, including unpaid income tax for 1993 and 1994.

3.   Petitioner and Her Husband's 1995 Tax Return

Taxes in the amount of $10,862 were withheld from petitioner's wages in 1995.  Mr. Wiwi made no estimated tax

payments to the United States and was not subject to withholding in 1995. Petitioner and Mr. Wiwi filed a joint Federal income tax return for 1995. On that return, they reported Federal income tax withheld on petitioner's wages of $10,862 and additional tax due of $6,220. However, they paid only $1,620 with their return; petitioner paid $1,069, and Mr. Wiwi paid $551. As a result of withholding and the payment with the return, petitioner paid an amount equal to the tax on her income, but Mr. Wiwi paid less than the tax due on his income.

Mr. Wiwi told petitioner (and she reasonably believed) that he would pay the unpaid 1995 tax as provided in a proposed installment agreement that he submitted with their 1995 income tax return. Mr. Wiwi failed to pay the remaining 1995 tax, but he concealed that fact from petitioner until 1998. Early in 1999, he filed an offer in compromise in which he said he could not pay the unpaid tax for 1995.

4. Petitioner's Finances

Petitioner and Mr. Wiwi have always kept their finances separate. Petitioner paid her own expenses (including Federal income tax on her income) beginning before they were married and continuing until the time of trial. Petitioner paid at least half of their household expenses from the date they were married until 1997. Mr. Wiwi began having medical problems in 1996. He lost his license to sell securities in 1997, and his income

decreased dramatically.  Since 1997, petitioner has worked at several temporary jobs and paid all of her and about 80 percent of Mr. Wiwi's expenses.  Petitioner's total monthly household expenses on behalf of herself and Mr. Wiwi in 1997 and 1998 (including rent, utilities, transportation, food, clothing, and medical insurance) were about $2,800.

Petitioner had about $5,000 in her savings account in 1996 and $13,500 at the time of trial.  She received wages of $65,792 in 1997, $65,338 in 1998, $66,315 in 2000, and $79,000 in 2002.[2]

Mr. Wiwi's medical condition worsened, which prevented him from working in 2000.  He had hip replacement surgery in 2000 and 2001.

In 2000, petitioner liquidated an individual retirement account (IRA) and used the proceeds (about $20,000) as part of a $33,000 downpayment to buy a $333,000 residence for Mr. Wiwi and herself.  The monthly mortgage payment was about the same as their previous rent payments.  At the time of trial, petitioner had a section 401(k) retirement account with the American Red Cross.  The record does not indicate the value of that account.

B.    Petitioner's Request for Relief From Joint Tax Liability

On February 2, 1999, petitioner filed Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), in which she sought relief from joint liability for a

---

[2] The record does not indicate the amount of petitioner's income for 1999 and 2001.

portion of the amount of the unpaid tax liability shown on the 1995 joint return. On June 6, 1999, respondent sent petitioner a letter which said that respondent had preliminarily determined that petitioner was not entitled to relief under section 6015(f).

An Appeals officer met with petitioner's representative for 3 hours on November 18, 1999, and for 2 hours on September 21, 2000. Respondent determined on October 31, 2000, that petitioner was not entitled to equitable relief under section 6015(f) for 1995. Respondent's only stated reasons were: "You had knowledge of the liability, and you are still married and living with the nonrequesting spouse." Exhibit 10-R, which includes the materials assembled by the examining agent and the Appeals officer in response to petitioner's claim for equitable relief, is respondent's administrative file (the administrative file) for this case. Petitioner timely filed a petition in this Court.

OPINION

A. Whether We Are Limited to Respondent's Administrative Record in Making Our Determination

1. Respondent's Position

Respondent contends that, in making our determination under section 6015(f), we may not consider evidence introduced at trial which was not included in the administrative record. More specifically, respondent contends that, pursuant to the Administrative Procedure Act (APA), 5 U.S.C. secs. 551-559, 701-706 (2000), and cases decided thereunder, this Court may consider

only the administrative record (the record rule) in making our determination in this case.[3]  See <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973); <u>United States v. Carlo Bianchi & Co.</u>, 373 U.S. 709, 715 (1963).  We disagree.  As discussed next, our holding herein is based on more than 75 years of well-established interpretative history and practice before this Court.

---

[3] The Commissioner has recently taken the contrary position in three U.S. Courts of Appeals cases.  Specifically, the Commissioner contended that the Tax Court did not err in collection cases arising under sec. 6330 in allowing the introduction of evidence that was not part of the administrative record.  See the Commissioner's briefs in <u>Holliday v. Commissioner</u>, 57 Fed. Appx. 774 (9th Cir. 2003), affg. T.C. Memo. 2002-67; <u>Lindsey v. Commissioner</u>, 56 Fed. Appx. 802 (9th Cir. 2003), affg. T.C. Memo. 2002-87; and <u>Chase v. Commissioner</u>, 55 Fed. Appx. 717 (5th Cir. 2002), affg. T.C. Memo. 2002-93.  In the Commissioner's brief in <u>Holliday v. Commissioner</u>, <u>supra</u>, the Commissioner argued that the:

> taxpayer labors under the faulty assumption that judicial review of CDP hearings is governed by the "record review" requirements of the Administrative Procedure Act, * * *  Although judicial review of the merits of agency actions pursuant to the APA is generally limited to the administrative record upon which the challenged action was based, see, e.g., <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743-44 (1985); <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973), taxpayer's petition in Tax Court was founded upon I.R.C. §6330(d)(1), not the judicial review provisions of the APA. * * *  Section 6330 does not impose any requirement that the Office of Appeals create a record or that judicial review by the Tax Court be limited to the facts or documents presented at the CDP hearing.

These three Courts of Appeals opinions are unpublished and are not binding precedent.  In each of those opinions, the Court of Appeals upheld the Commissioner's position.

2.  Our Jurisdiction To Determine Whether the Taxpayer Qualifies for Relief Under Section 6015(f)

Section 6015(f)[4] authorizes the Secretary to prescribe procedures under which, taking into account all the facts and circumstances, the Secretary may determine that it is inequitable to hold an individual jointly liable for tax. Section 6015(e)(1)(A)[5] provides our jurisdiction in section 6015 cases.  Section 6015(e)(1)(A) provides that a taxpayer against whom a deficiency has been asserted and who elects to have

---

[4]  Sec. 6015(f) provides:

SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

[5]  SEC. 6015(e). Petition for review by Tax Court.--

(1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply--

(A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed–

section 6015(b) or (c) apply may petition this Court "to determine the appropriate relief available to the individual" under section 6015, including relief under section 6015(f). Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000). To prevail under section 6015(f), petitioner must show that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion. Jonson v. Commissioner, 118 T.C. 106, 125 (2002); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, 114 T.C. 276, 292 (2000).

### 3. Determinations and Redeterminations by This Court

Section 6015(e)(1)(A), which authorizes this Court to determine the appropriate relief available under section 6015, is similar to our deficiency jurisdiction in section 6213, which provides that taxpayers who receive a notice of deficiency may petition this Court for a redetermination of the deficiency. Sec. 6213(a).

It is well established that the APA does not apply to deficiency cases in this Court; that is, cases arising under sections 6213 or 6214 in which we may redetermine the taxpayer's tax liability. O'Dwyer v. Commissioner, 266 F.2d 575, 580 (4th Cir. 1959), affg. 28 T.C. 698 (1957); Nappi v. Commissioner, 58

T.C. 282, 284 (1972).[6]  In contrast, respondent contends that the APA applies to our proceedings under section 6015(f).  As discussed next, we find no convincing reason to treat our determinations under section 6015(f) and section 6213(a) differently for purposes of applicability of the APA.

We make redeterminations under section 6213(a) de novo.  O'Dwyer v. Commissioner, supra at 580; Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-28 (1974); see Clapp v. Commissioner, 875 F.2d 1396, 1403 (9th Cir. 1989); Raheja v. Commissioner, 725 F.2d 64, 66 (7th Cir. 1984), affg. T.C. Memo. 1981-690; Jones v. Commissioner, 97 T.C. 7, 18 (1991) ("a trial before this Court is a proceeding de novo; hence our determination of a taxpayer's liability must be based on the merits of the case and not on any previous record developed at the administrative level").  Congress has used both "determine" and "redetermination" in establishing the jurisdiction of the Tax Court.  We see no material difference between the words

---

[6] In O'Dwyer v. Commissioner, 266 F.2d 575, 580 (4th Cir. 1959), affg. 28 T.C. 698 (1957), the U.S. Court of Appeals for the Fourth Circuit held that 5 U.S.C. sec. 554(a)(1) does not apply to deficiency determinations in this Court because in those cases we are not reviewing a record of a formal proceeding; i.e., there is no hearing transcript, witness testimony, or exhibits introduced by the parties.  To emphasize that the Tax Court is a trial court, the Court in O'Dwyer pointed out that the Tax Court is empowered to prescribe rules of practice and procedure, and is required to apply the rules of evidence applicable to nonjury trials in the U.S. District Court for the District of Columbia and to make findings of fact upon such evidence.  Secs. 6213, 7453, 7459.

"determine" in section 6015(e) and "redetermination" in section 6213(a) for purposes of this discussion.

Since 1924, the Tax Court (and the predecessor Board of Tax Appeals, see Consol. Cos. v. Commissioner, 15 B.T.A. 645, 652 (1929)) has had jurisdiction to "redetermine" deficiencies and additions to tax, secs. 6213 and 6214(a); and, since 1926, to determine overpayments, sec. 6512(b).  Under section 6213(a) and its predecessors, we (and earlier, the Board of Tax Appeals) have "redetermined" deficiencies de novo, not limited to the Commissioner's administrative record, for more than 75 years.

We can presume that Congress was aware of this long history in 1998 when Congress used the word "determine" in section 6015.  If Congress includes language from a prior statute in a new statute, courts can presume that Congress intended the longstanding legal interpretation of that language to be applied to the new statute.  Commissioner v. Noel's Estate, 380 U.S. 678, 680-681 (1965); United States v. 101.80 Acres, 716 F.2d 714, 721 (9th Cir. 1983).

There are other situations in which this Court makes determinations de novo.  For example, section 7436(a) provides that the Tax Court may "determine" whether the Commissioner's determination regarding an individual's employment status is correct.  Congress intended that we conduct a trial de novo with respect to our determinations regarding employment status.  See

H. Rept. 105-148, at 639 (1997), 1997-4 C.B. (Vol. 1) 319, 961;

S. Rept. 105-33, at 304 (1997), 1997-4 C.B. (Vol. 2) 1067, 1384;

H. Conf. Rept. 105-220, at 734 (1997), 1997-4 C.B. (Vol. 2) 1457,

2204.  As another example, section 6404 authorizes this Court to

"determine" whether the Secretary's refusal to abate interest was

an abuse of discretion.  Our practice has been to make our

determination after providing an opportunity for a trial de novo.

See, e.g., Goettee v. Commissioner, T.C. Memo. 2003-43; Jean v.

Commissioner, T.C. Memo. 2002-256; Jacobs v. Commissioner, T.C.

Memo. 2000-123.

Our long tradition of providing trials de novo in making our

determinations, and Congress's use of the word "determine" in our

jurisdictional grant in section 6015(e)(1)(A), suggest that

Congress intended that we provide an opportunity for a trial de

novo in making our determinations under section 6015(f).[7]

---

[7]  This Court has jurisdiction to issue declaratory
judgments relating to the status, qualification, valuation, or
classification of certain sec. 501(c)(3) organizations,
retirement plans, gifts, governmental obligations, and
installment payments under sec. 6166.  Secs. 7428, 7476, 7477,
7478, 7479.  None of those sections authorizes us to make a
determination; instead, those provisions authorize this Court,
after the Commissioner has made a determination, to make a
declaration with respect to the matter.
    Our Rules relating to declaratory judgment cases provide for
consideration of evidence not in the administrative record under
various circumstances.  Our disposition of actions under sec.
7476 for declaratory judgment involving the initial qualification
of a retirement plan, and actions under sec. 7428 for the initial
qualification or classification of an exempt organization,
private foundation, or private operating foundation is
(continued...)

4.  Whether Trial De Novo Is Appropriate in Determining
    Whether Respondent's Determination Under Section
    6015(f) Was an Abuse of Discretion

Respondent contends that, because a taxpayer is entitled to relief under section 6015(f) only if we determine that the Commissioner's determination was an abuse of discretion, we may consider only the Commissioner's administrative record in making our determination. We disagree. Respondent's view that we should not provide a trial de novo if the standard of review is abuse of discretion is at odds with decades of Tax Court precedent and practice. The traditional effect of applying an abuse of discretion standard in this Court is to alter the standard of review, not to restrict what evidence we consider in making our determination.

Courts have used various, but similar, phrases to describe the meaning of an abuse of discretion standard, such as: The taxpayer bears a heavy burden of proof, the Commissioner's

---

[7](...continued)
"ordinarily" based on the administrative record, unless, "with the permission of the Court, upon good cause shown," the Court permits a party to introduce evidence that had not been presented to the Commissioner. Rule 217(a). Our disposition of a governmental obligation action under sec. 7478 is "made on the basis of the administrative record, augmented by additional evidence to the extent that the Court may direct." Id. Our disposition of a declaratory judgment action involving a revocation, gift valuation, or the eligibility of an estate with respect to installment payments under sec. 6166 "may be made on the basis of the administrative record alone only where the parties agree that such record contains all the relevant facts and that such facts are not in dispute." Id.

position deserves our deference, and we do not interfere unless the Commissioner's determination is arbitrary, capricious, clearly unlawful, or without sound basis in fact or law. See, e.g., Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533, 550 (1979); Jonson v. Commissioner, 118 T.C. at 125; see also Patton v. Commissioner, 116 T.C. 206, 210 (2001); Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 648 (1989); Oakton Distribs., Inc. v. Commissioner, 73 T.C. 182, 188 (1979).

Our longstanding practice has been to hold trials de novo in many situations where an abuse of discretion standard applies. In those cases, our practice has not been to limit taxpayers to evidence contained in the administrative record or arguments made by the taxpayer at the administrative level. Examples of actions in which we conduct a trial de novo are whether it was an abuse of discretion for the Commissioner to (1) determine that a taxpayer's method of accounting did not clearly reflect income under section 446, e.g., Thor Power Tool Co. v. Commissioner, supra at 533 (Supreme Court used Tax Court findings in making its determination); Mulholland v. United States, 25 Cl. Ct. 748 (1992);[8] (2) reallocate income or deductions under section 482,

_____

[8] The U.S. Court of Federal Claims conducts a trial de novo in tax refund cases in which the Commissioner has exercised discretion and determined that the taxpayer's method of accounting does not clearly reflect income under sec. 446(b). Mulholland v. United States, 25 Cl. Ct. 748 (1992). In Mullholland, the Claims Court rejected the Government's
                                                    (continued...)

e.g., <u>Bausch & Lomb, Inc. v. Commissioner</u>, 933 F.2d 1084, 1088 (2d Cir. 1991) (U.S. Court of Appeals for the Second Circuit implicitly approved our de novo consideration of section 482 reallocations), affg. 92 T.C. 525 (1989); (3) fail to waive penalties and additions to tax, e.g., <u>Krause v. Commissioner</u>, 99 T.C. 132, 179 (1992) (based in part on the Commissioner's expert's testimony that taxpayers were influenced by energy crisis to invest in energy partnerships, failure to waive the addition to tax for underpayment attributable to valuation overstatement under section 6659(e) was an abuse of discretion), affd. sub nom. <u>Hildebrand v. Commissioner</u>, 28 F.3d 1024 (10th Cir. 1994); (4) refuse to abate interest under section 6404, see paragraph A-3, above; (5) refuse to grant the taxpayer's request for an extension of time to file, e.g., <u>Estate of Proios v. Commissioner</u>, T.C. Memo. 1994-442 (taxpayer's failure to call witnesses held against the taxpayer); and (6) disallow a bad debt reserve deduction, e.g., <u>Newlin Mach. Corp. v. Commissioner</u>, 28

---

[8](...continued)
contention that <u>Thor Power Tool Co. v. Commissioner</u>, 439 U.S. 522 (1979), limits the court to review of the record and the facts upon which the Commissioner relied in making the determination. The court said that the Supreme Court did not indicate in <u>Thor Power Tool Co. v. Commissioner</u>, <u>supra</u>, and <u>AAA v. United States</u>, 367 U.S. 687 (1961), "that either the Tax Court or the Court of Claims improperly conducted a trial de novo to determine whether the Commissioner had, in fact, abused his discretion in determining whether the accounting method clearly reflected income. Instead, the [Supreme] Court relied on the findings of fact of both courts in making its own determination." <u>Mulholland v. United States</u>, <u>supra</u> at 756.

T.C. 837, 845 (1957) (testimony and evidence considered). We are aware of no reason to depart from this longstanding practice in making our determination under section 6015(f).

5. Magana v. Commissioner Does Not Govern This Case

In Magana v. Commissioner, 118 T.C. 488 (2002), a case in which we reviewed the Commissioner's determination under section 6330(d)(1) that tax lien filings were appropriate, we held that, absent special circumstances, the taxpayer could not raise before this Court an issue he had not raised in a hearing conducted by the Commissioner's Appeals office under section 6330(b). Id. at 493. The issue the taxpayer first sought to raise before this Court was that collection of tax would cause hardship to him because of his poor health and the resulting cloud on title to his residence, his only significant asset. Id. at 493-494. We said that, absent special circumstances, in our review of whether the Commissioner's determination was an abuse of discretion under section 6330(d),[9] we consider only arguments, issues, and other matters that were raised at the section 6330(b) hearing or otherwise brought to the attention of the Appeals Office. Id.

---

[9] Under sec. 6330, we review a taxpayer's underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Magana v. Commissioner, 118 T.C. 488, 493 (2002), involved only issues where our review was for abuse of discretion. In Magana, underlying tax liability was not at issue.

Respondent contends that, under our holding in Magana, we may not consider facts or issues that were not previously raised by the taxpayer during the Commissioner's consideration of the taxpayer's request for relief under section 6015(f).  We disagree that Magana applies here for several reasons.  First, in Magana, we said we were not deciding whether our holding therein applies to claims for relief from joint liability under section 6015 raised in a collection proceeding under section 6330.  Id. at 494 n.3.  Clearly, then, our holding in Magana does not apply to claims for relief from joint liability not brought under section 6330, e.g., brought as stand alone claims under section 6015(f).  Second, we did not say in Magana that the taxpayer would be limited to the administrative record or that the taxpayer may not offer evidence in the proceeding in this Court.  Third, in Magana we did not discuss the APA or the record rule.  Thus, we conclude that Magana does not govern here.

6.  Our Adoption of Respondent's Position Would Lead to Inconsistent Procedures in Similar Cases

Adoption of respondent's position would lead to the anomaly of proceedings in some section 6015(f) cases on the basis of the Commissioner's administrative record and trials de novo in others.  Consider two examples.  First, a trial de novo would be necessary if a taxpayer petitions this Court 6 months after filing an election for section 6015 relief and the Commissioner has made no determination granting or denying relief.  Sec.

6015(e)(1)(A)(i)(II).  We have jurisdiction to make a determination in this situation, even though there may be no administrative record.  Thus, trial de novo is clearly authorized and appropriate.

Second, in a deficiency case, we hold a trial de novo relating to a taxpayer's affirmative defense that he or she is entitled to innocent spouse relief under section 6015(f).  See, e.g., Butler v. Commissioner, 114 T.C. at 287, 292.  Adoption of respondent's position here would cause us to apply different procedures in our determinations under section 6015 cases.

We have previously indicated our preference for uniform procedures under section 6015(e).  For example, we have declined to treat nonelecting spouses in deficiency proceedings differently from nonelecting spouses in stand alone proceedings (i.e., cases in which a taxpayer requests relief from joint and several liability that are independent of any deficiency proceeding).  Corson v. Commissioner, 114 T.C. 354, 364 (2000).  Similarly, we believe taxpayers should have the same opportunity to have a trial de novo relating to entitlement to relief under section 6015(f) whether relief was raised as an affirmative defense in a deficiency proceeding, in a stand alone proceeding where the Commissioner has issued a final determination denying the taxpayer's request for relief, or in a stand alone proceeding where the Commissioner has failed to rule on the taxpayer's claim

within 6 months of its filing.  In <u>Corson v. Commissioner</u>, <u>supra</u> at 364, we stated:

> we believe that the interests of justice would be ill
> served if the rights of the nonelecting spouse were to
> differ according to the procedural posture in which the
> issue of relief under section 6015 is brought before
> the Court.  Identical issues before a single tribunal
> should receive similar treatment. * * *

As in <u>Corson</u>, we believe that cases in which the taxpayer seeks relief under section 6015(f) should receive similar treatment and, thus, the same standard of review.

The nonrequesting spouse may elect to intervene in the judicial proceeding in which we determine whether the requesting spouse qualifies for relief under section 6015(f).  Sec. 6015(e)(4).[10]  This election is available both in deficiency cases in which section 6015 relief is requested, and in stand alone cases, such as this case.  Rule 325; <u>King v. Commissioner</u>, 115 T.C. 118, 122-123 (2000); <u>Corson v. Commissioner</u>, <u>supra</u> at 365.  The fact that Congress provided for intervention by nonrequesting spouses in the Tax Court proceeding suggests Congress intended that we conduct trials de novo in making our determinations under section 6015(f) to permit the intervenor to offer evidence to challenge the requesting spouse's entitlement to relief.

--------

[10]  Sec. 6015(e)(4) states in pertinent part that "The Tax Court shall establish rules which provide the individual * * * not making the election * * * with adequate notice and an opportunity to become a party to a proceeding".

7. <u>Conclusion</u>

Part of our interpretative responsibility here is to give proper effect to both section 6015(e) and (f).  Courts attempt to read statutory provisions harmoniously, so as to give proper effect to all of the words of the statute.  See <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 133 (2000) (citing <u>FTC v. Mandel Bros., Inc.</u>, 359 U.S. 385, 389 (1959)); <u>Bend v. Hoyt</u>, 38 U.S. 263, 272 (1839).  We have done so here.  We read these provisions to give effect to the other.  Our de novo review of the Commissioner's determinations under section 6015(f) gives effect to the congressional mandate that we determine whether a taxpayer is entitled to relief under section 6015.  The measure of deference provided by the abuse of discretion standard is a proper response to the fact that section 6015(f) authorizes the Secretary to provide procedures under which, based on all the facts and circumstances, the Secretary may relieve a taxpayer from joint liability.  That approach (de novo review, applying an abuse of discretion standard) properly implements the statutory provisions at issue here, and has a long history in numerous other areas of Tax Court jurisprudence.  See <u>supra</u> pp. 14-16.

We conclude that our determination whether petitioner is entitled to equitable relief under section 6015(f) is made in a trial de novo and is not limited to matter contained in

respondent's administrative record, and that the APA record rule does not apply to section 6015(f) determinations in this Court.[11]

B.   Whether Petitioner Is Entitled to Equitable Relief

Respondent contends that, even if we consider matter raised at trial which was not included in the administrative file, respondent's determination that petitioner is not entitled to equitable relief was not an abuse of discretion.  We disagree.

The Commissioner announced a list of factors in Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. 447, 448,[12] that the Commissioner

---

[11] Our holding herein is consistent with APA provisions relating to judicial determinations made in connection with agency actions.  Tit. 5 U.S.C. sec. 554 (2000) ("Adjudications") does not apply to matters subject to trial of the law and the facts de novo, such as our redetermination of a deficiency. O'Dwyer v. Commissioner, 266 F.2d 575, 580 (4th Cir. 1959), affg. 28 T.C. 698 (1957).  Tit. 5 U.S.C. sec. 706(2)(F) (2000) provides, inter alia, that a "reviewing court" shall "hold unlawful and set aside agency action, findings and conclusions found to be * * * unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."  A matter may be made subject to trial de novo by U.S. Code provisions applicable to a specific action.  See, e.g., 7 U.S.C. sec. 2023(a)(15) (2000) (suits for judicial review of certain agency actions under the food stamp program are by "a trial de novo * * * in which the court shall determine the validity of the questioned administrative action in issue").  As held herein, our determinations under sec. 6015(e) are made based on trials de novo.  The legislative history of sec. 6015 does not suggest that Congress contemplated changing the well-established inapplicability of the APA to Tax Court determinations.  S. Rept. 105-174, at 55-60 (1998), 1998-3 C.B. 537, 591-596; H. Conf. Rept. 105-599, at 249-255 (1998), 1998-3 C.B. 747, 1003-1008.

[12]  Respondent's determination was subject to Rev. Proc. 2000-15, 2000-1 C.B. 447, because it was in effect when respondent's Appeals officer evaluated petitioner's request and when respondent issued the notice of determination.  Rev. Proc.

(continued...)

will consider in deciding whether to grant equitable relief under section 6015(f). Rev. Proc. 2000-15, supra, lists the following two facts, which if true, the Commissioner weighs in favor of granting relief: (1) The taxpayer is separated or divorced from the nonrequesting spouse; and (2) the taxpayer was abused by his or her spouse; and the following two facts, which if true, the Commissioner weighs against granting relief: (3) the taxpayer received significant benefit from the unpaid liability or the item giving rise to the deficiency; and (4) the taxpayer has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates.

Rev. Proc. 2000-15, supra, implies that the Commissioner will generally not consider the absence of facts (1), (2), (3), or (4) in determining whether to grant relief under section 6015(f). However, based on caselaw deciding whether it was equitable to relieve a taxpayer from joint liability under former section 6013(e)(1)(D), we consider the fact that a taxpayer did not significantly benefit from the unpaid liability or item

---

¹²(...continued)
2000-15, supra, superseded Notice 98-61, 1998-2 C.B. 756, effective Jan. 18, 2000. Rev. Proc. 2003-61, 2003-32 I.R.B. 296 (Aug. 11, 2003), superseded Rev. Proc. 2000-15, supra, for requests for relief under sec. 6015(f) pending on Nov. 1, 2003, for which no preliminary determination letter had been issued as of Nov. 1, 2003, and for requests for relief filed on or after Nov. 1, 2003.

giving rise to the deficiency as a factor in favor of granting relief to that taxpayer.[13]  <u>Ferrarese v. Commissioner</u>, T.C. Memo. 2002-249 (citing <u>Belk v. Commissioner</u>, 93 T.C. 434, 440-441 (1989); <u>Foley v. Commissioner</u>, T.C. Memo. 1995-16; <u>Robinson v. Commissioner</u>, T.C. Memo. 1994-557; <u>Klimenko v. Commissioner</u>, T.C. Memo. 1993-340; <u>Hillman v. Commissioner</u>, T.C. Memo. 1993-151).

Rev. Proc. 2000-15, <u>supra</u>, lists the following four facts which, if true, the Commissioner weighs in favor of granting relief, and if not true, the Commissioner weighs against granting relief: (5) the taxpayer would suffer economic hardship if relief is denied; (6) in the case of a liability that was properly reported but not paid, the taxpayer did not know and had no reason to know that the liability would not be paid; (7) the liability for which relief is sought is attributable to the nonrequesting spouse; and (8) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability (weighs against relief only if the requesting spouse has the obligation).

Rev. Proc. 2000-15, sec. 4.03(2), <u>supra</u>, also states:

No single factor will be determinative of whether equitable relief will or will not be granted in any

---

[13]  Cases deciding whether a taxpayer was entitled to equitable relief under sec. 6013(e)(1)(D) are helpful in deciding whether a taxpayer is entitled to relief under sec. 6015(f). <u>Mitchell v. Commissioner</u>, 292 F.3d 800, 806 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332; <u>Cheshire v. Commissioner</u>, 282 F.3d 326, 338 n.29 (5th Cir. 2002), affg. 115 T.C. 183 (2000).

particular case.  Rather, all factors will be considered and weighed appropriately.  The list is not intended to be exhaustive.

As discussed next, none of the factors used by the Commissioner in making section 6015(f) determinations supports respondent's determination in this case.

### 1.   Petitioner's Marital Status

Petitioner was still married to Mr. Wiwi at the time of trial.  Respondent determined without further explanation, but did not otherwise argue before the Court, that the marital status factor weighs against petitioner.  We conclude that this factor is neutral.

### 2.   Spousal Abuse

Mr. Wiwi did not abuse petitioner.  Respondent does not contend that the spousal abuse factor weighs against petitioner. We conclude that this factor is neutral.

### 3.   Significant Benefit

Respondent does not argue that petitioner significantly benefited from Mr. Wiwi's underpayment of tax for 1995. Petitioner has paid more than one half of her and Mr. Wiwi's expenses since the time they were married.  Petitioner has not received any income or other financial benefit from Mr. Wiwi. Petitioner's financial situation worsened after 1995 due to Mr. Wiwi's financial problems.  We conclude that petitioner did not

significantly benefit from Mr. Wiwi's failure to pay tax on his income and that this factor favors petitioner.

4.    Compliance With Tax Laws

Petitioner filed returns for tax years following 1995 and has complied with tax laws at least since 1995. Respondent contends that petitioner was not in compliance with Federal tax laws because taxes were underwithheld from petitioner's income for 1997. We disagree. Although taxes were underwithheld from petitioner's income for 1997, petitioner paid an amount equal to the tax on her income for that year by paying $4,453 with the 1997 joint return she timely filed with Mr. Wiwi. Respondent does not explain how the fact that petitioner was underwithheld for one tax year shows that she was noncompliant with the tax laws; respondent does not contend that petitioner's payment for 1997 was late or inadequate or that she was underwithheld in any other year. The fact that taxes were underwithheld from petitioner for 1997 does not mean that she was not in compliance with the tax laws. On the contrary, her timely payment of all taxes she owed for that year shows she complied with the tax laws.[14] Rev. Proc. 2000-15, supra, lists tax compliance as a factor which the Secretary will consider only against granting relief. We conclude that this factor is neutral.

_____

[14] Respondent does not contend that petitioner is liable for the penalty under sec. 6654 for failure to pay estimated tax for 1997.

5. <u>Economic Hardship</u>

Respondent contends that petitioner had enough assets and income from which to pay the unpaid tax for 1995 and that petitioner failed to show that she would suffer economic hardship if relief is denied.  Petitioner contends that she would suffer economic hardship if relief were denied because she would be unable to pay for basic living expenses for herself and Mr. Wiwi.

Petitioner paid all of her and at least half of Mr. Wiwi's monthly living expenses, totaling about $2,800, in 1997 and 1998. During that time, petitioner had only temporary and part-time jobs, and had no benefits.  Mr. Wiwi's medical condition worsened, and his ability to earn any income decreased. Petitioner remained married to Mr. Wiwi and paid his increasing expenses.  Petitioner was prudent in saving some money under these circumstances.  On the facts of this case, we disagree with respondent that petitioner would not suffer a hardship if she were required to use her savings, or to borrow against the equity in her house, to pay the unpaid tax attributable to Mr. Wiwi.  We conclude that this factor favors petitioner.

6. <u>Knowledge or Reason To Know</u>

In determining whether a taxpayer in an underpayment case is entitled to equitable relief under section 6015(f), we consider whether the requesting spouse knew, or reason to know, that the tax would be unpaid when the return was signed.  <u>Hopkins v.</u>

Commissioner, 121 T.C. 73, 88 (2003); Wiest v. Commissioner, T.C. Memo. 2003-91.

Respondent contends that, when petitioner signed the 1995 return, she knew or had reason to know that Mr. Wiwi would not pay the tax due for 1995, and that it was not reasonable for petitioner to believe that Mr. Wiwi would pay the tax. We disagree.

When Mr. Wiwi and petitioner filed their 1995 tax return, he told her, and she reasonably believed, that he would pay the unpaid tax for 1995 according to an installment agreement he had attached to the return. However, Mr. Wiwi failed to pay that tax or to pay tax according to the installment agreement. Mr. Wiwi concealed from petitioner until 1998 that he had failed to pay the unpaid 1995 tax. During those years petitioner did not know and had no reason to know of Mr. Wiwi's failure to pay that tax. This fit his pattern of deception; Mr. Wiwi had also concealed from her that he owed tax for 1993 and 1994. Respondent offered no contrary evidence on this factor. We conclude that this factor favors petitioner.

7. Whether the Underpayment of Tax Is Attributable to Petitioner's Husband

Respondent concedes that the underpayment of tax for 1995 is attributable to Mr. Wiwi.

8.  Legal Obligation To Pay Tax

Respondent does not argue that the legal obligation factor weighs against petitioner.  We conclude that the legal obligation factor does not apply here because petitioner and Mr. Wiwi are not divorced.  Ferrarese v. Commissioner, T.C. Memo. 2002-249; see Washington v. Commissioner, 120 T.C. 137, 148-149 (2003).

9.  Other Factors

A taxpayer is entitled to equitable relief under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold that individual liable.  Rev. Proc. 2000-15, supra, acknowledges that the factors listed therein are not exhaustive.  Despite this, respondent did not consider the fact, as discussed above, that petitioner did not participate in any wrongdoing in this case; on the contrary, the problem began with Mr. Wiwi, who, as discussed above, concealed from petitioner that he had not paid the unpaid tax for 1995.  In deciding whether it is inequitable to hold a spouse liable under section 6015(b)(1)(D),[15] we have considered whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse.  Hayman v. Commissioner, 992 F.2d 1256, 1262

---

[15] The equitable factors we consider under sec. 6015(b)(1)(D) are the same equitable factors we consider under sec. 6015(f).  Alt v. Commissioner, 119 T.C. 306, 316 (2002); Butler v. Commissioner, 114 T.C. 276, 291 (2000).

(2d Cir. 1993), affg. T.C. Memo. 1992-228; Alt v. Commissioner, 119 T.C. 306, 314 (2002); Jonson v. Commissioner, 118 T.C. at 119. It is also relevant to petitioner's claim for relief that petitioner and Mr. Wiwi were married for less than 4 months in 1995; all of the problems began with Mr. Wiwi in that most of Mr. Wiwi's underpayment of tax for 1995 apparently occurred because he failed to make estimated tax payments before they were married. These facts support petitioner's claim that she is entitled to relief under section 6015(f).

10. Conclusion

Petitioner has presented an especially strong case for relief from joint liability under factors promulgated by the Commissioner in Rev. Proc. 2000-15, supra: all of these factors either weigh in favor of petitioner or are neutral, and none of those factors weigh against granting relief to petitioner. Petitioner did not significantly benefit from the underpayment, the underpayment was solely attributable to Mr. Wiwi, she has complied with Federal tax laws at least since 1995, she did not know or have reason to know Mr. Wiwi would not pay the unpaid tax for 1995, and payment of the tax would cause economic hardship. The neutral factors include petitioner's marital status and lack of spousal abuse. The legal obligation factor does not apply here because petitioner and Mr. Wiwi are still married. We determine that respondent's denial of relief under section

6015(f) was an abuse of discretion, and that, on the basis of all the facts and circumstances, it would be inequitable to hold petitioner liable for the underpayment of tax for 1995.

To reflect the foregoing,

Decision will be

entered for petitioner.

Reviewed by the Court.

WELLS, COHEN, SWIFT, GERBER, LARO, VASQUEZ, GALE, THORNTON, HAINES, GOEKE, and KROUPA, JJ., agree with this majority opinion.

WHERRY, J., concurs in result only.

THORNTON, J., concurring:  I agree with the majority and write separately to address certain points regarding the application of the Administrative Procedure Act (APA), 5 U.S.C. secs. 551-559, 701-706 (2000), to Tax Court proceedings and our application of the abuse of discretion standard in cases for spousal relief under section 6015.

Since its enactment in 1946, the APA has never governed proceedings in this Court (or in its predecessor, the Board of Tax Appeals).  See, e.g., O'Dwyer v. Commissioner, 266 F.2d 575, 580 (4th Cir. 1959) ("The Tax Court * * * is a court in which the facts are triable de novo * * * .  We agree that the Tax Court is not subject to the Administrative Procedure Act."), affg. 28 T.C. 698 (1957).  This long-established practice comports with the provisions of the APA and its history.

As a statute of general application, the APA does not supersede specific statutory provisions for judicial review.  APA section 704 provides:  "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. sec. 704 (2000).  APA section 703 governs the form and venue of judicial review under the APA.  See 5 U.S.C. sec. 703 (2000). The legislative history of APA section 703 makes clear that where there is a special statutory review proceeding relevant to the subject matter, that special statutory review "shall not be disturbed".  S. Comm. on the Judiciary, 79th Cong., 1st Sess.,

Administrative Procedure Act (Comm. Print 1945), reprinted in Administrative Procedure Act Legislative History, 1944-46, at 37 (1946);[1] see H. Rept. 1980, 79th Cong. 2d Sess. (1946), reprinted in Administrative Procedure Act Legislative History, 1944-46, at 276 (1946) (same).  As the U.S. Supreme Court stated in Bowen v. Mass., 487 U.S. 879, 903 (1988), "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies."

Applying these principles, the U.S. Court of Appeals for the Fifth Circuit has indicated that the APA is not an appropriate vehicle for challenging the Commissioner's denial of a request to abate interest under section 6404.  See Beall v. United States, 336 F.3d 419, 427 n.9 (5th Cir. 2003) ("review under the APA is accordingly available only where 'there is no other adequate remedy in a court.'").  Similarly, in an unpublished opinion involving the validity of the Commissioner's issuance of a notice

---

[1] The Senate Judiciary Committee Print is part of the legislative history of the Administrative Procedure Act (APA). See Dept. of Labor v. Greenwich Collieries, 512 U.S. 267, 278 (1994); Darby v. Cisneros, 509 U.S. 137, 147-148 (1993); Grolier, Inc. v. FTC, 615 F.2d 1215, 1220 (9th Cir. 1980); Marathon Oil Co. v. EPA, 564 F.2d 1253, 1260 n.25 (9th Cir. 1977); see also Carter/Mondale Presidential Comm., Inc. v. Fed. Election Commn., 711 F.2d 279, 284 n.9 (D.C. Cir. 1983); WWHT, Inc. v. FCC, 656 F.2d 807, 813 n.8 (D.C. Cir. 1981).

of deficiency, the Court of Appeals for the Seventh Circuit concluded:  "The APA is irrelevant, however, because the IRS's issuance of a notice of tax deficiency and the Tax Court's review of it are governed by the Internal Revenue Code and the rules and procedures of the Tax Court * * *  and not by the APA."  Bratcher v. Commissioner, 79 AFTR 2d 97-3110, at 97-3112, 97-2 USTC par. 50,495, at 89,016 (7th Cir. 1997), affg. T.C. Memo. 1996-252; see also Am. Gen. Ins. Co. v. FTC, 359 F. Supp. 887, 893 (S.D. Tex. 1973) (rejecting a jurisdictional claim under the APA because there was no final agency action and plaintiff had an adequate remedy at law under the Clayton Act), affd. 496 F.2d 197 (5th Cir. 1974); Armstrong & Armstrong, Inc. v. United States, 356 F. Supp. 514, 521 (E.D. Wash. 1973) ("As relief is at least available * * * under 28 U.S.C. § 1491 (1970), judicial review may not be predicated on the Administrative Procedure Act."), affd. 514 F.2d 402 (9th Cir. 1975); Poirier v. Commissioner, 299 F. Supp. 465, 466 (D.C. La. 1969) (rejecting taxpayer's claim that review to restrain enforcement of IRS summons is governed by APA sections 703 and 704 because sections 7602 and 7604 and Reisman v. Caplin, 375 U.S. 440 (1964) "[provide] an adequate remedy").[2]

---

[2] Similarly, it is well established that the APA does not override sec. 7421(a) (known as the Anti-Injunction Act, 26 U.S.C. sec. 7421(a) (2000)), which provides that "no suit for the purpose of restraining the assessment or collection of any tax

(continued...)

The Tax Code has long provided a specific statutory framework for reviewing deficiency determinations of the Internal Revenue Service. Section 6015 is part and parcel of this statutory framework. This Court's de novo review procedures emanate from this statutory framework. Accordingly, the APA judicial review procedures do not supplant this Court's longstanding de novo review procedures in cases arising under section 6015.

Moreover, the fact that section 6015 postdates the APA does not render the APA judicial review procedures applicable here. APA section 559 provides that the APA does "not limit or repeal additional requirements imposed by statute or otherwise recognized by law." 5 U.S.C. sec. 559 (2000). When the APA was enacted in 1946, this Court's de novo procedures for reviewing IRS functions were well established and "recognized by law"

---

[2](...continued)
shall be maintained in any court by any person". This provision is "part of a specific statutory framework intended by Congress as limitations not negated by the APA." Fostvedt v. United States, 978 F.2d 1201, 1204 (10th Cir. 1992); see McCarty v. United States, 929 F.2d 1085, 1088 (5th Cir. 1991) (precluding relief under the APA because sec. 7421 is a specific statute that bars the requested relief); Lonsdale v. United States, 919 F.2d 1440, 1444 (10th Cir. 1990) ("Congress has provided express methods by which proposed deficiencies, assessments, or collections of taxes may be challenged, and express prohibition in the Anti-Injunction Act, 26 U.S.C. § 7421(a) against suits brought for the purpose of restraining the assessment or collection of any tax except in the prescribed manner."); cf. 5 U.S.C. sec. 702 (2000) ("Nothing herein * * * confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.").

within the meaning of APA section 559.[3]  See, e.g., <u>Phillips v.</u>
<u>Commissioner</u>, 283 U.S. 589, 598, 600 (1931) (stating that in
deficiency proceedings before the Board of Tax Appeals, "there is
a complete hearing de novo * * *.  The adequacy of the scope of
review * * * is now thoroughly established."); <u>Blair v.</u>
<u>Oesterlein Machine Co.</u>, 17 F.2d 663, 665 (D.C. Cir. 1927) ("the
Board [of Tax Appeals] is vested with full reviewing jurisdiction
over the findings of the Commissioner * * *.  The appellate power
includes the authority, not only to review, but to investigate de
novo, the matters in controversy between the government and the
taxpayer").[4]  These de novo trial procedures, which have remained

_____

[3] When the APA was enacted, this Court had jurisdiction not
only to redetermine deficiencies, but also to determine certain
overpayments, to redetermine excessive profits on defense
contracts as previously determined by the Secretary of the
Treasury, and to hear claims for refunds of processing taxes; all
these matters were reviewed de novo.  See Revenue Act of 1943,
ch. 63, sec. 701(e), 58 Stat. 86 (excessive profits); Revenue Act
of 1942, ch. 619, secs. 504, 510(b), 56 Stat. 957, 967 (refunds
of processing taxes); Revenue Act of 1926, ch. 27, sec. 284(e),
44 Stat. 67 (overpayments); Revenue Act of 1924, ch. 234, sec.
274, 43 Stat. 297 (deficiencies).

[4] In one of its earliest decisions, the Board of Tax Appeals
characterized its scope of review in deficiency proceedings as
follows:

> When a taxpayer brings his case before the Board
> he proceeds by trial <u>de</u> <u>novo</u>.  The record of the case
> made in the Internal Revenue Bureau is not before the
> Board except in so far as it may be properly placed in
> evidence by the taxpayer or by the Commissioner.  The
> Board must decide each case upon the record made at the
> hearing before it, and, in order that it may properly
> do so, the taxpayer must be permitted to fully present

(continued...)

essentially unchanged since the APA's enactment, provide a stricter scope of review of the Commissioner's determinations than would obtain under APA review procedures. Consequently, pursuant to APA section 559, the APA does not limit or repeal "additional requirements" arising from this Court's de novo review procedures.

The legislative history of the APA confirms this understanding. See S. Comm. on the Judiciary, 79th Cong., 1st Sess., Administrative Procedure Act (Comm. Print 1945), reprinted in Administrative Procedure Act Legislative History, 1944-46, at 22 (1946) (stating that there are exempted from APA formal adjudication requirements matters that are subject to de novo review of facts and law such "as the tax functions of the Bureau of Internal Revenue (which are triable de novo in The Tax Court)"); S. Rept. 752, 79th Cong., 1st Sess. (1945), reprinted in Administrative Procedure Act Legislative History, 1944-46, at 214 (1946) (explaining that pursuant to APA provisions governing the scope of judicial review, courts establish facts de novo

---

[4](...continued)
any questions relating to his tax liability which may be necessary to a correct determination of the deficiency. To say that the taxpayer who brings his case before the Board is limited to questions presented before the Commissioner, and that the Board in its determination of the case is restricted to a decision of issues raised in the Internal Revenue Bureau would be to deny the taxpayer a full and complete hearing and an open and neutral consideration of his case. [Barry v. Commissioner, 1 B.T.A. 156, 157 (1924).]

where the agency adjudication is not subject to APA formal adjudication provisions "such as tax assessments * * * not made upon an administrative hearing and record, [where] contests may involve a trial of the facts in the Tax Court"); H. Rept. 1980, 79th Cong., 2d Sess. (1946), reprinted in Administrative Procedure Act Legislative History, 1944-46, at 279 (1946) (same).

The mere fact that judicial review is for abuse of discretion in a spousal relief case arising under section 6015(f) does not trigger application of the APA record rule or preclude this Court from conducting a de novo trial. As the majority opinion correctly notes, this Court has a long tradition of providing trials when reviewing the Commissioner's determinations under an abuse of discretion standard. For example, when reviewing for abuse of discretion the Commissioner's refusal to abate interest under section 6404, this Court has consistently conducted trials. See, e.g., Goettee v. Commissioner, T.C. Memo. 2003-43; Jean v. Commissioner, T.C. Memo. 2002-256; Jacobs v. Commissioner, T.C. Memo. 2000-123.

In sum, the APA does not disturb or supersede this Court's longstanding de novo judicial review procedures for cases involving spousal relief under section 6015. This is not to say, however, that this Court could not or should not, in appropriate circumstances, borrow principles of judicial review embodied in the APA. Indeed, on occasion this Court has done so. For

instance, in Dittler Bros., Inc. v. Commissioner, this Court looked to APA caselaw in adopting a "substantial evidence" rule as the appropriate measure for reviewing the reasonableness of the Commissioner's determination as to tax avoidance in a declaratory judgment action arising under former section 7477. Dittler Bros., Inc. v. Commissioner, 72 T.C. 896, 909 (1979), affd. without published opinion 642 F.2d 1211 (5th Cir. 1981). The Court based its decision partly on the legislative history of former section 7477, which made it "clear that Congress did not intend the Court's judgment to be a mere de novo redetermination" but rather a review of the Commissioner's determination. Id.; see also Mailman v. Commissioner, 91 T.C. 1079, 1082 (1988) (holding that the Commissioner's exercise of administrative discretion in failing to waive additions to tax under former section 6661 is subject to judicial review); Estate of Gardner v. Commissioner, 82 T.C. 989, 994 (1984) (looking to principles of administrative law, "now incorporated into the Administrative Procedure Act", as supporting a presumption that the Commissioner's discretionary actions in denying a request for a filing extension under section 2032A were subject to judicial review).

As the majority opinion notes, this Court's rules regarding declaratory judgments involving retirement plans and exempt organizations generally require these actions to be disposed of

on the basis of the administrative record.  See Rule 217(a).

Again, much as in <u>Dittler Bros., Inc. v. Commissioner</u>, <u>supra</u>, the

reason for this limited review procedure lies in a legislative

directive that "The court is to base its determination upon the

reasons provided by the Internal Revenue Service in its notice to

the party making the request for a determination, or based upon

any new matter which the Service may wish to introduce at the

time of trial."  H. Rept. 93-807, at 108 (1974), 1974-3 C.B.

(Supp.) 236, 343; see Rule 217(a), Explanatory Note, 68 T.C.

1048.[5]

By contrast, Congress has not imposed a restrictive standard

for this Court's review of the Commissioner's determinations

under section 6015.  Clearly, when it enacted section 6015,

Congress was aware that this is a trial court that has

historically resolved cases by taking evidence and has never been

governed by the APA.  Nothing in the statute or the legislative

history indicates that the APA is to apply to section 6015 cases

---

[5] When Congress acted in 1976 to expand this Court's
declaratory judgment jurisdiction to include matters involving
exempt organizations, the report of the Senate Finance Committee
stated:  "The judgment of the court in a declaratory judgment
proceeding is to be * * * based upon the facts as presented to
the court".  S. Rept. 94-938, pt. 1, at 588 (1976), 1976-3 C.B.
(Vol. 3) 49, 626.  In a footnote to this sentence, the report
added: "In many cases, this would be essentially the
administrative record before the Internal Revenue Service" and
cited the notes to the Tax Court's rules.  <u>Id.</u> at n.7, 1976-3
C.B. (Vol. 3) at 626.  Notably, the legislative history makes no
reference to APA procedures, from which we infer that Congress
did not contemplate that APA procedures would apply.

or that we are to restrict our review to the administrative record.  Section 6015 expanded the Court's jurisdiction to review all denials of relief from joint and several liability.  As described in the conference report, the House bill "specifically provides that the Tax Court has jurisdiction to review any denial of innocent spouse relief."  H. Conf. Rept. 105-599, at 250 (1998), 1998-3 C.B. 747, 1004.  Similarly, under the Senate amendment, "The Tax Court has jurisdiction of disputes arising from the separate liability election."  Id. at 251, 1998-3 C.B. at 1005.  The conference agreement "follows the House bill and the Senate amendment in establishing jurisdiction in the Tax Court over disputes arising in this area."  Id.

The legislative purpose in enacting section 6015 was to provide spouses with broader access to relief from joint and several tax liabilities.  See id. at 249, 1998-3 C.B. at 1003. In light of that fact, it seems unlikely that Congress would have intended Tax Court review of a spouse's claim to be governed by the more restrictive APA judicial review procedures rather than by the Tax Court's customary de novo review procedures.

In conclusion, I believe that the majority opinion, in its rejection of the APA record rule and in its application of the abuse of discretion standard, is consistent with this Court's

well-established practice and appropriately implements

legislative intent to provide spouses open and neutral

consideration of their claims under section 6015.

WELLS, COHEN, SWIFT, GERBER, LARO, VASQUEZ, GALE, MARVEL, HAINES, GOEKE, and COLVIN, JJ., agree with this concurring opinion.

HALPERN and HOLMES, JJ., dissenting:  This case presents the issue of whether one of the guiding principles of administrative law--the record rule--governs our review of a decision by the Commissioner to deny relief under section 6015(f).  The majority concludes that it does not.  That conclusion is potentially of great significance because it will likely affect the manner in which we decide other types of cases arising under our expanding nondeficiency jurisdiction.[1]  Because the majority's conclusion is contrary to settled principles of administrative law regarding the proper scope of judicial review, and because it misapplies the abuse of discretion standard of review, we respectfully dissent.

Before proceeding, it is important to distinguish between two concepts--"scope of review" and "standard of review"--that delimit judicial review of agency action.  As succinctly stated by the U.S. Court of Appeals for the Tenth Circuit:

> The scope of judicial review refers merely to the evidence the reviewing court will examine in reviewing an agency decision.  The standard of judicial review refers to how the reviewing court will examine that evidence.

Franklin Sav. Association v. Office of Thrift Supervision, 934 F.2d 1127, 1136 (10th Cir. 1991) (emphasis added).  The majority concludes that the appropriate scope of review in section 6015(f)

---

[1]  See, e.g., secs. 6404(h) (review of interest abatement denials) and 6330(d) (review of collection due process determinations).  This "review" jurisdiction has become an increasingly large part of our caseload over the last decade.

cases is "de novo".  Used to describe a reviewing court's scope of review, the term "de novo" signifies that the court is not limited to reviewing the administrative record; rather, the parties are free to create a new evidentiary record upon which the reviewing court will base its decision.[2]  As for the appropriate <u>standard</u> of review in this case, the parties agree that we should review respondent's denial of section 6015(f) relief for abuse of discretion.  We discuss the disputed scope of review in Part I, and we discuss the majority's application of the undisputed standard of review in Part II.

I. <u>Our Scope of Review Should Be Limited to the Administrative Record</u>

A. <u>Introduction</u>

1. <u>Identifying the Issue</u>

The specific issue in this case is whether, in reviewing respondent's decision to deny section 6015(f) relief to petitioner, we (1) are limited by the record rule to consideration of the administrative record, as respondent contends, or (2) may consider evidence adduced at trial, as

---

[2]  In the context of a court's <u>standard</u> of review, the term "de novo" signifies that the reviewing court need not give any deference to the decision reached by the administrative agency; that is, the reviewing court may substitute its judgment for that of the agency (even if such court's scope of review is the administrative record).  See 2 Childress & Davis, Federal Standards of Review, sec. 15.02, at 15-3 – 15-4 (3d ed. 1999).

petitioner contends.[3]  Following respondent's lead, the majority opinion and concurring opinion largely frame that issue in terms of whether the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. secs. 701-706 (2000), apply to proceedings in this Court.  That characterization is somewhat overbroad, as should be evident from the following introductory discussions of the record rule and the APA.  Whether couched in terms of the record rule or the APA, the dispositive inquiry in this case is whether Congress intended our review of respondent's section 6015(f) determinations to be effected by means of de novo proceedings.

    2.  Section 6015(f)

Section 6015(f) provides that, if a joint filer does not qualify for relief from joint and several liability under section 6015(b) or (c), the Secretary may, under procedures prescribed by him, grant such relief on equitable grounds.  We have jurisdiction to review the Commissioner's decisions under section 6015(e).  Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000).  We have previously held that we review such decisions for abuse of discretion.  E.g., Jonson v. Commissioner, 118 T.C. 106, 125 (2002).  We adopted that standard on the basis of

---

    [3]  Judge Colvin, the trier of fact in this case, conducted a trial de novo with the understanding that the subsequent resolution of the record rule's application would determine whether he could properly consider the evidence adduced at trial in resolving the sec. 6015(f) issue.

previous opinions of this Court considering discretionary authority of the Commissioner (i.e., we did so apart from any consideration of the APA judicial review provisions).  See id.; Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

### 3.  The Record Rule

The record rule refers to the general rule of administrative law that a court can engage in judicial review of an agency action based only on consideration of the record amassed by the agency (the administrative record).  2 Pierce, Administrative Law Treatise, sec. 11.6, at 822 (4th ed. 2002).  Of course, in situations where Congress has provided for de novo proceedings in the reviewing court, the record rule by its terms does not apply.  On the other hand, "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court [the Supreme Court] has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held."  United States v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963) (citing pre-APA cases).[4]  Similarly, standards of review such as "arbitrary" and "capricious" (terms we have associated with the

---

[4]  The record rule predates, and indeed is not codified in, the APA, which was enacted in 1946.  See, e.g., Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 443 (1930); see also 2 Pierce, Administrative Law Treatise, sec. 11.6, at 823 (4th ed. 2002).

abuse of discretion standard we adopted for section 6015(f) cases, see <u>Jonson v. Commissioner</u>, <u>supra</u> at 125) have consistently signified a review limited to the administrative record.  <u>United States v. Carlo Bianchi & Co.</u>, <u>supra</u> at 715. Thus, regardless of the applicability of the APA in this case, the record rule seemingly would apply unless "abuse of discretion" means something different in tax law than it does elsewhere.

### 4.    Administrative Procedure Act

Chapter 7 of the APA, 5 U.S.C. secs. 701-706 (2000), provides rules for judicial review of agency action.  The relevant provision for our purposes is APA section 706(2), which lists various circumstances in which a reviewing court must set aside agency action.  Two paragraphs of APA section 706(2) are important here: paragraph (A), requiring a reviewing court to reverse agency action that it finds is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; and paragraph (F), requiring a reviewing court to reverse agency action that it finds is "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."[5]  The Supreme Court has confirmed the applicability of

---

[5]  Pars. (B) through (D) of APA sec. 706(2) relate to agency action that is unconstitutional, outside the agency's scope of authority, or procedurally defective.  Par. (E) relates to "formal" agency action (i.e., action that is statutorily required
(continued...)

the record rule in cases where APA section 706(2)(A) provides the appropriate standard of review.  See <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743-744 (1985); <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973); see also <u>Holy Land Found. for Relief & Dev. v. Ashcroft</u>, 333 F.3d 156, 162 (D.C. Cir. 2003); <u>Beno v. Shalala</u>, 30 F.3d 1057, 1073-1074 (9th Cir. 1994).  Conversely, in cases that fall into the de novo category of APA section 706(2)(F), the record rule by its terms does not apply.

     B.  <u>Applicability of the APA</u>

         1.  <u>The Majority Opinion</u>

Although, as discussed above, the issue is not necessarily dispositive, we begin by addressing the majority's conclusion that the judicial review provisions of the APA are inapplicable in this case.  The majority begins with the premise that "[i]t is well established that the APA does not apply to deficiency cases in this Court; that is, cases arising under sections 6213 or 6214 in which we may redetermine the taxpayer's tax liability." Majority op. p. 9.  The majority then concludes that it "[finds] no convincing reason to treat our determinations under section 6015(f) and section 6213(a) differently for purposes of applicability of the APA."  Majority op. p. 10.

---

[5](...continued)
to be determined on the record after opportunity for an agency hearing, see APA sec. 554(a)) that is not supported by substantial evidence.

2. Applicability of the APA to Deficiency Cases in This Court

We disagree with the majority's premise that the judicial review provisions of the APA do not apply to ordinary deficiency cases in this Court.  It is undoubtedly true that the record rule does not apply to such cases.  That is not the consequence of an implied exemption from the APA; rather, it is the consequence of the application of APA section 706(2)(F), which, as discussed above, provides that a reviewing court shall set aside agency action that is "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."  Both the House report and the Senate report accompanying the APA point to "tax assessments", which "may involve a trial of the facts in the Tax Court", as an example of the type of agency action to which APA section 706(2)(F) applies.  S. Rept. 752, 79th Cong., 1st Sess. 28 (1945); H. Rept. 1980, 79th Cong., 2d Sess. 45 (1946).  Thus, while it may be accurate to say that the enactment of the APA had no practical effect on our scope of review in deficiency cases, the majority's claim that the APA "does not apply" to such cases is erroneous.[6]

_____

[6]  The distinction is important in terms of context.  Once it is conceded that the Tax Court has never been "exempt" from the APA judicial review provisions, our conclusion that those provisions have practical consequences in relation to our recently granted jurisdiction to review sec. 6015(f) adjudications does not seem revolutionary.

In support of its premise that the judicial review provisions of the APA do not apply to deficiency cases in this Court, the majority primarily relies on O'Dwyer v. Commissioner, 266 F.2d 575 (4th Cir. 1959), affg. 28 T.C. 698 (1957).[7]  The taxpayer in O'Dwyer sought to compel the IRS to produce its entire administrative file, based in part on language in APA section 706 directing the reviewing court to "review the whole record".  Id. at 578-580.  Perhaps out of concern that judicial review of the "whole record" within the meaning of APA section 706 would be inconsistent with the established Tax Court practice of not "looking behind" statutory notices of deficiency,[8] the court felt compelled to conclude that the Tax Court is not a reviewing court for purposes of the APA.  Id. at 580.  The court based that conclusion on the premise that the APA judicial review provisions (APA sections 701-706) apply only to "formal" adjudications (i.e., those subject to the procedures set forth in APA sections 554, 556, and 557).  Id.  Given subsequent caselaw

---

[7]  The majority also cites Nappi v. Commissioner, 58 T.C. 282 (1972).  In Nappi, the Court simply concluded that the Tax Court is not an "agency" that is subject to the administrative procedure (as opposed to judicial review) provisions of the APA (APA secs. 551-559).  Id. at 284.

[8]  To the extent the Court was so concerned, such concern appears to have been unfounded.  See S. Rept. 752, 79th Cong., 1st Sess. 28 (1945); H. Rept. 1980, 79th Cong., 2d Sess. 46 (1946) (stating that the requirement of review upon the whole record means simply "that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case").

establishing that the judicial review provisions of the APA apply to informal, as well as formal, adjudications, e.g., <u>Fla. Power & Light Co. v. Lorion</u>, <u>supra</u> at 744, the continuing relevance of the APA discussion in <u>O'Dwyer</u> is dubious at best.[9]

### 3. Applicability of the APA to Section 6015(f) Cases

Given the legislative history discussed above (and the questionable relevance of the <u>O'Dwyer</u> case), the majority's premise that the judicial review provisions of the APA do not apply to deficiency cases in this Court cannot stand. Furthermore, APA section 559 would seem to preclude the possibility that such provisions do not apply to our relatively

---

[9] In his concurring opinion, Judge Thornton supplements his reliance on the <u>O'Dwyer</u> case with statutory analysis. He implies that the import of APA sec. 704 (which provides in part that "agency action for which there is no other adequate remedy in a court are subject to judicial review") is that, where there is an existing "adequate remedy in court", the APA is inapplicable. Concurring op. pp. 31-32. However, as Judge Thornton himself recognizes, the Supreme Court has characterized the import of the above-quoted portion of APA sec. 704 as follows: "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend * * * to duplicate the previously established special statutory procedures relating to specific agencies." <u>Bowen v. Mass.</u>, 487 U.S. 879, 903 (1988). Thus, for example, a taxpayer who disagrees with a deficiency notice does not have a separate cause of action in Federal district court under the APA. It does not follow that the APA is "inapplicable" to deficiency cases (see discussion of APA sec. 706(2)(F) above). Similarly, in <u>Beall v. United States</u>, 336 F.3d 419 (5th Cir. 2003), another case cited by Judge Thornton which refers to the <u>Bowen</u> discussion of APA sec. 704, the court merely made the technical point that the taxpayer's interest abatement claim was cognizable as a refund suit under sec. 7422 rather than as a separate cause of action under the APA. <u>Id.</u> at 427 n.9.

new jurisdiction to review section 6015(f) adjudications: "[A][s]ubsequent statute may not be held to supersede or modify * * * chapter 7 * * * except to the extent that it does so expressly." Section 6015(e), of course, makes no mention of the APA (or the appropriate standard or scope of review, for that matter). We would therefore hold that the APA judicial review provisions apply to section 6015(f) cases as well as deficiency cases.

C. APA Section 706(2)(A) vs. APA Section 706(2)(F)

1. The Majority Opinion

Assuming the applicability of the APA judicial review provisions in this case, the relevant inquiry becomes whether Congress intended (as it clearly did in the context of deficiency proceedings) our review of section 6015(f) adjudications to fall into the "trial de novo" category of APA section 706(2)(F). The majority, while framing the issue in terms of the propriety of de novo proceedings rather than the applicability of APA section 706(2)(F), concludes that "Congress intended that we provide an opportunity for a trial de novo in making our determinations under section 6015(f)." Majority op. p. 12. The majority bases that conclusion on the similarity between the words "determine" and "redetermination" appearing in sections 6015(e) and 6213(a), respectively. Specifically, the majority reasons that: (1) Section 6213(a), which establishes our jurisdiction over deficiency cases, uses the term "redetermination", and (2)

deficiency cases in this Court are decided by trial de novo, so (3) section 6015(e), which uses the term "determine", must reflect a congressional intent for us to review section 6015(f) adjudications by trial de novo. In other words, the majority assumes that, when Congress uses the word "determine" (or a variation thereof) in the context of Tax Court review, such word signifies a trial de novo.

### 2. Use of the Word "Determine" in Section 6015(f) Does Not Signify De Novo Proceedings

#### a. Legislative History of Other Tax Provisions

The legislative history of certain declaratory judgment provisions of the Code contradicts the majority's assumption regarding Congress's use of the word "determine". As the majority recognizes, this Court has jurisdiction to issue declaratory judgments in several situations. Majority op. p. 12 note 7. For example, we have jurisdiction under section 7476 to make a declaration with respect to the initial or continuing qualification of certain retirement plans. In that regard, we have stated that "it is clear that Congress did not expect the Tax Court to conduct a trial de novo and make an independent examination of the facts to determine if the subject plan was qualified." Tamko Asphalt Prods., Inc. v. Commissioner, 71 T.C. 824, 837 (1979), affd. 658 F.2d 735 (10th Cir. 1981); see also Rule 217(a) and Explanatory Note, 68 T.C. 1031, 1047. While the majority notes that section 7476 authorizes us to make a

"declaration" rather than a "determination", majority op. p. 12

note 7, the House report explaining section 7476 describes the

provision in part as follows:

> The Court is to base its <u>determination</u> upon the reasons provided by the Internal Revenue Service in its notice to the party making the request for a determination, or based upon any new matter which the Service may wish to introduce at the time of the trial.[10]  The Tax Court judgment, however, is to be based upon a <u>redetermination</u> of the Internal Revenue Service's determination and not on a general examination of the provisions of the plan or related trust.  * * *
>
>      *   *   *   *   *   *   *
>
> * * * In order to provide the Court with flexibility in carrying out this provision, the bill authorizes the Chief Judge of the Tax Court to assign the Commissioners of the Tax Court to hear and make <u>determinations</u> with respect to petitions for a declaratory judgment, subject to such conditions and review as the Court may provide.

H. Rept. 93-779 at 107, 108 (1974), 1974-3 C.B. 244, 350, 351

(emphasis added); see also S. Rept. 93-383 at 114, 115 (1974),

1974-3 C.B. (Supp.) 80, 193, 194 (similar).  Similar language

appears in committee reports describing section 7428 (declaratory

judgments relating to section 501(c)(3) status) and former

section 7477 (declaratory judgments relating to section 367

transfers).  See H. Rept. 94-658 at 244, 245, 285, 288 (1975),

1976-3 C.B. (Vol. 2) 695, 936, 937, 977, 980; S. Rept. 94-938 at

---

[10]  "In raising new matters in a declaratory judgment proceeding under section 7476, the matters are to be based on information contained in the administrative record, not on facts gathered after the administrative record has closed." <u>Halliburton Co. v. Commissioner</u>, T.C. Memo. 1992-533.

266, 267, 588, 591 (1976), 1976-3 C.B. (Vol. 3) 49, 304, 305, 626, 629.  The foregoing would seem to deflate the notion that Congress equates the word "determine" (and variations thereof) with de novo proceedings in the context of Tax Court review.

b.  Use of the Word "Determination" Elsewhere

Congress's use of the word "determination" in a similar, non-tax context is also instructive.  Section 636(b)(1) of the Federal Magistrates Act, 28 U.S.C. secs. 631-639 (2000), provides that, in the case of certain "dispositive" motions assigned to a magistrate, a district judge "shall make a de novo determination of those portions of the [magistrate's] report" to which objection is made.  In interpreting that provision, the Supreme Court stated:

> It should be clear that on these dispositive motions, the statute calls for a de novo determination, not a de novo hearing.  We find nothing in the legislative history of the statute to support the contention that the judge is required to rehear the contested testimony in order to * * * make the required "determination."  * * *

United States v. Raddatz, 447 U.S. 667, 674 (1980).  The Court quoted the following language from the House report accompanying the bill that became the Federal Magistrates Act:

> The use of the words "de novo determination" is not intended to require the judge to actually conduct a new hearing on contested issues.  Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate.  * * *

Id. at 675 (quoting H. Rept. 94-1609 at 3 (1976)).  Thus,

Congress has used the phrase "de novo determination" in the

context of other (non-tax) trial court proceedings to signify an

independent determination (i.e., without deference to the result

reached by the initial decisionmaker) by the trial court that is

nonetheless based on the record developed by the initial

decisionmaker.[11]

  D.   The "Abuse of Discretion" Standard of Review in Tax
Court Proceedings

       1.   The Majority Opinion

The majority acknowledges that the standard of review in

this case is abuse of discretion.  As discussed above at I.A.3.,

regardless of the applicability of the APA, the abuse of

discretion standard traditionally has been associated with the

application of the record rule.  The majority therefore is forced

---

[11]   In his concurring opinion, supra p. 34, Judge Thornton
concludes that the following statutory language renders our pre-
APA de novo trial procedures applicable to sec. 6015(f) cases:
"This subchapter, [and] chapter 7 * * * do not limit or repeal
additional requirements imposed by statute or otherwise
recognized by law."  APA sec. 559.  We agree that the enactment
of the APA in 1946 did not preempt this Court's existing de novo
trial procedures.  See supra note 6 and accompanying text; see
also supra note 9.  We do not agree that our jurisdiction to
review sec. 6015(f) adjudications, created in 1998, can be
stitched to our pre-APA deficiency jurisdiction for these
purposes.  Specifically, we emphatically do not agree that sec.
6015 is "part and parcel" of the "specific statutory framework
for reviewing deficiency determinations of the Internal Revenue
Service."  Concurring op. supra p. 34; see infra discussion at
I.D.2.

to take the position that the abuse of discretion standard of review has different evidentiary consequences in the context of Tax Court review than it does elsewhere: "The traditional effect of applying an abuse of discretion standard in this Court is to alter the standard of review, not to restrict what evidence we consider in making our determination." Majority op. p. 13. The majority proceeds to list six examples of situations in which we have conducted trials de novo to determine whether the Commissioner has abused his discretion: (1) Section 446 cases, (2) section 482 cases, (3) review of the Commissioner's refusal to waive penalties and additions to tax, (4) review of interest abatement denials, (5) review of the Commissioner's refusal to grant filing extensions, and (6) review of the Commissioner's disallowance of a bad debt reserve deduction. Majority op. pp. 14-16.

## 2. Distinguishing the Majority's Examples

In all but one of the majority's examples regarding de novo proceedings in the context of this Court's abuse of discretion review, the Commissioner's exercise of discretion is relevant to his determination of the existence or amount of a deficiency in tax or an addition to tax that is subject to our deficiency jurisdiction.[12]  Our opinion in Estate of Gardner v.

_____

[12] The one exception involves our jurisdiction (conferred in 1996) to review interest abatement adjudications. The
(continued...)

Commissioner, 82 T.C. 989, 999, 1000 (1984), is instructive in
that regard:

> However, once our deficiency jurisdiction has been
> properly invoked, we will examine de novo the merits of
> respondent's deficiency determinations, including his
> exercise of discretion under section 6081 [filing
> extension], to the extent that the alleged deficiency
> and any addition to tax within our deficiency
> jurisdiction (see sec. 6662) [now sec. 6665] turn upon
> respondent's discretionary actions.  * * *
>
> * * * Rather, our review of respondent's denial of an
> extension of time to file the estate tax return in this
> case is necessary for us to determine the merits of
> respondent's substantive determination of a deficiency.
> Here the sole reason for denial of the section 2032A
> special use election (and hence the basis for the major
> portion of the asserted deficiency) is the assertion
> that the estate tax return was not timely filed.

The approach suggested by Estate of Gardner (albeit in the
context of whether the Commissioner's discretion under section
6081 is reviewable at all) is an appropriate and workable means
of determining whether our review of an exercise of discretion by
the Commissioner is properly the subject of a trial de novo.
Applying that test to section 6015(f), the Commissioner's
exercise of discretion under that provision is not relevant to
his determination of the existence or amount of a deficiency in

---

[12](...continued)
majority opinion cites three recent interest abatement cases
(each the subject of a memorandum opinion) in which we conducted
trials de novo.  Majority op. p. 12.  While the issue is not
before us today, we would conclude that, for the same reasons
discussed herein, our review of the Commissioner's interest
abatement denials is not properly the subject of de novo
proceedings.

tax or an addition to tax that is subject to our deficiency jurisdiction.[13]  Accordingly, we would hold that this Court's review of such adjudications is not properly the subject of de novo proceedings.

### E.  Procedural Consistency

#### 1.  In General

The majority opinion states that "[a]doption of respondent's position would lead to the anomaly of proceedings in some section 6015(f) cases on the basis of the Commissioner's administrative record and trials de novo in others."  Majority op. p. 17. Assuming that a trial de novo would be appropriate in certain circumstances, see sec. 6015(e)(1)(A)(i)(II),[14] we maintain that a de novo determination of eligibility for section 6015(f) relief on one hand, and a review of the Commissioner's denial of such

---

[13]  That is true even when the taxpayer seeks review of the Commissioner's denial of sec. 6015(f) relief as part of a deficiency case.  In that situation, the Commissioner's exercise of discretion may determine the taxpayer's liability for any deficiency ultimately assessed but has no bearing on the existence or amount of that deficiency.  If a taxpayer were to challenge the Commissioner's denial of relief in a subsequent deficiency proceeding, we see no reason why we could not conduct a trial de novo regarding the existence or amount of the deficiency while disposing of any sec. 6015(f) denial on the basis of its administrative record.

[14]  The majority cites Butler v. Commissioner, 114 T.C. 276 (2000), in support of the proposition that, if a taxpayer challenges the Commissioner's denial of sec. 6015(f) relief in a subsequent deficiency proceeding, the trial de novo with respect to the deficiency extends to our disposition of the sec. 6015(f) issue.  As explained in note 13, we disagree.  The Court, of course, did not address that issue in Butler.

relief for abuse of discretion on the other, are two fundamentally different judicial exercises for which different procedures are entirely appropriate.

### 2.  Nonrequesting Spouses

We also disagree with the majority's conclusion that "[t]he fact that Congress provided for intervention by nonrequesting spouses in the Tax Court proceeding suggests Congress intended that we conduct trials de novo in making our determinations under section 6015(f)".  Majority op. p. 19.  There are numerous examples in administrative law where third parties are allowed to intervene in judicial proceedings involving the review of agency action.  See, e.g., Didrickson v. United States Dept. of Interior, 982 F.2d 1332 (9th Cir. 1992).  We are not aware of any cases holding that such third parties may introduce matters outside the scope of the relevant administrative record.  Cf. Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 549-555 (1978) (upholding Atomic Energy Commission's refusal to consider conservation alternatives raised by intervenor subsequent to initial licensing decision).

### F.  Conclusion

We conclude that our scope of review in this case should be limited to the administrative record.

II. Misapplying the Abuse of Discretion Standard

A. Introduction

While we disagree with the majority's conclusion that the scope of review--a trial de novo--is correct, we recognize that the Court has previously adopted abuse of discretion as the standard of review for section 6015(f) cases. See, e.g., Jonson v. Commissioner, 118 T.C. at 125. Courts generally hold that a decisionmaker abuses his discretion "when it makes an error of law * * * or rests its determination on a clearly erroneous finding of fact * * * [or] applies the correct law to facts which are not clearly erroneous but rules in an irrational manner." United States v. Sherburne, 249 F.3d 1121, 1125-1126 (9th Cir. 2001); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402-403 (1990) (same).

The majority describes the abuse of discretion standard as follows: "The taxpayer bears a heavy burden of proof, the Commissioner's position deserves our deference, and we do not interfere unless the Commissioner's determination is arbitrary, capricious, clearly unlawful, or without sound basis in fact or law." Majority op. pp. 13-14. Accepting the majority at its word--the proper approach is de novo review, applying an abuse of discretion standard, majority op. p. 20--we fail to see how the majority has done anything other than ignore its description of the abuse of discretion standard and, instead, substitute its

judgment for respondent's, both as to the procedures prescribed by the Secretary pursuant to section 6015(f) and respondent's determination of various factual issues in this case.

B. New Standards

Properly applied, abuse of discretion review recognizes that Congress intended agencies to have considerable leeway in setting standards. Unless those standards are in some way contrary to the statute and so constitute "an error of law", courts should respect them and not substitute their own. We are bound by the following rule of deference:

> Federal courts must defer to any reasonable interpretation given to the statute by the agency charged with its administration, as well as to the agency's interpretations and application of its regulations and policies in carrying out its statutory duties, unless plainly erroneous.

Wilkins v. Lujan, 995 F.2d 850, 853 (8th Cir. 1993) (citation and internal quotation marks omitted); see also Citizens Action League v. Kizer, 887 F.2d 1003 (9th Cir. 1989).

Section 6015(f) instructs the Secretary to prescribe procedures for exercising his discretion to provide equitable relief under that section. The Secretary has prescribed the required procedures in Rev. Proc. 2000-15, 2000-1 C.B. 447. Section 4 of the revenue procedure is entitled "General Conditions for Relief". Section 4.01 thereof lists certain necessary ("threshold") conditions for relief; section 4.02 lists circumstances under which the Secretary will ordinarily grant

equitable relief; and section 4.03, among other things, lists the factors that the Secretary will consider in determining whether he will grant equitable relief in situations where he would not ordinarily grant it under section 4.02. While the majority does not disregard the general conditions listed in section 4 of the revenue procedure, it does not defer to them, treating them, rather, as suggestions, to be respected to the extent that the majority agrees with them.

The majority substitutes its standards for the Secretary's in at least three ways:

(1) The Secretary does not regard the requesting spouse's lack of significant benefit from an unpaid liability as weighing in favor of relief. The majority does. Majority op. pp. 22-23.

(2) The Secretary does not regard the failure of a requesting spouse to participate in wrongdoing as weighing in favor of relief. The majority does. Majority op. p. 25.

(3) The Secretary does not regard the fact of a requesting spouse's status as a newlywed as weighing in favor of relief. The majority does. Majority op. p. 29.

The majority's standards may be reasonable, but since the majority has made no finding that the Secretary's are not, we should not substitute ours for his. Whatever force the majority attaches to the abuse of discretion standard under which it labors, that force is not apparent in the majority's treatment of

the Secretary's prescription in Rev. Proc. 2000-15, <u>supra</u>, of the conditions required for relief under section 6015(f).

C.  <u>Commissioner's Judgment</u>

Moreover, we fail to see how the abuse of discretion standard has any force in connection with the majority's review of respondent's fact findings.  We are principally concerned by the majority's failure to defer to respondent's findings on perhaps the two most important facts that the majority cites in favor of relief--the supposed economic hardship petitioner would suffer were relief not granted, and her supposed lack of knowledge that her husband would not pay his 1995 tax liability under the terms of an installment agreement.

With respect to economic hardship, the majority contradicts respondent's finding that petitioner had enough assets and income from which to pay the unpaid tax for 1995 and that she failed to show she would suffer economic hardship if relief were denied. Among the facts that the majority finds are:  (1) In 2002, petitioner received wages of $79,000, (2) she owned a house in which, at least in 2002, she had equity of $33,000, (3) at the time of trial, she had $13,500 in a savings account, and (4) at the time of trial, she owned a 401(k) retirement account of undetermined amount.  Certainly, she had expenses in caring for Mr. Wiwi, but the majority does not tell us what they are.  Based on the majority's findings, it appears that the 1995 unpaid tax

is no more than $6,220 (increased by interest). We fail to see how respondent's finding that petitioner would suffer no economic hardship if relief were denied runs afoul of the majority's recitation of the abuse of discretion standard: "arbitrary, capricious, clearly unlawful, or without sound basis in fact or law."[15] Majority op. p. 14.

With respect to petitioner's knowledge, the majority contradicts respondent's finding that, when petitioner signed the 1995 return, she knew or had reason to know that Mr. Wiwi would not pay the tax for 1995, and that it was not reasonable for petitioner to believe that Mr. Wiwi would pay the tax. The majority finds: "Mr. Wiwi told petitioner * * * that he would pay the unpaid 1995 tax as provided in a proposed installment agreement that he submitted with their 1995 income tax return." Majority op. p. 4. In finding that petitioner reasonably believed that Mr. Wiwi would pay the tax owed, the majority states:

> Mr. Wiwi concealed from petitioner until 1998 that he had failed to pay the unpaid 1995 tax. During those years petitioner did not know and had no reason to know of Mr. Wiwi's failure to pay that tax. This fit his pattern of deception; Mr. Wiwi had also concealed from her that he owed tax for 1993 and 1994. Respondent

---

[15] Petitioner's first lawyer even admitted in his first meeting with respondent's Appeals Office that his client would not suffer economic hardship were relief not granted. Ex. 10-R at 113.

offered no contrary evidence on this factor.  We
conclude that this factor favors petitioner.

Majority op. p. 27 (emphasis added).

The time for testing petitioner's belief is when she signed the 1995 return.  See majority op. p. 26.  At that time, petitioner knew that Mr. Wiwi would not presently pay the unpaid tax.  He told her that he would pay the tax pursuant to a "proposed" installment agreement that he was submitting with their joint return.  The Commissioner, however, is not obligated to accept an installment agreement.  See sec. 6159.

The majority finds nothing to establish petitioner's evaluations of the probabilities that:  (1) The proposed installment agreement would be accepted or (2) Mr. Wiwi could immediately pay the unpaid tax if the proposed installment agreement were rejected.  Indeed, the majority's failure to find that an installment agreement was accepted leads us to believe either that Mr. Wiwi did not actually submit the agreement or that respondent rejected it.[16]  More importantly, while we acknowledge that reasonable persons could draw different inferences from that portion of the factual record, we do not

---

[16]  The administrative record shows no installment agreement, either attached to the return or separate, either in draft or in final form.  Indeed, the only mention of an installment agreement is the notation "no installment agreement" in the notes of the Appeals officer from petitioner's second Appeals conference.  Ex. 10-R at 105.

understand how the majority can conclude that respondent abused his discretion in finding that it was not reasonable for petitioner to believe that Mr. Wiwi would pay the unpaid tax at the time she signed the return.

D.   Conclusion

The majority has failed to convince us that respondent's ultimate finding of fact--that petitioner was not entitled to equitable relief--was "arbitrary, capricious, clearly unlawful, or without sound basis in fact or law"; in other words, an abuse of discretion.  See majority op. pp. 13-14.

III.   Conclusion

We close by returning to our first point:  The scope of our review of the Commissioner's denial of section 6015(f) relief should be limited to the administrative record, since the Tax Court is not exempt from the ordinary principles of administrative law that bind other courts reviewing agency action.  Had the majority so limited the scope of its review, and had it then examined respondent's denial of relief to petitioner pursuant to a correct application of the abuse of discretion standard, to determine whether it was "arbitrary, clearly unlawful, or without sound basis in fact or law", we believe that respondent would have prevailed.

CHIECHI, J., dissenting:  I agree with the majority opinion's rejection of respondent's argument that the APA controls the proceedings in the instant case.  However, that conclusion does not require the majority opinion to hold, as it does, nor does it logically lead to holdings (1) that, in determining whether to grant relief under section 6015(f), the Court may consider matters raised at trial that petitioner did not raise with respondent's Appeals Office and (2) that petitioner is entitled to equitable relief under section 6015(f). I dissent from those holdings and disagree with the rationales that the majority opinion offers in support of them.

With respect to the majority opinion's holding that, in determining whether to grant relief under section 6015(f), the Court may consider matters raised at trial that petitioner did not raise with respondent's Appeals Office, nothing in section 6015 requires the Court, in exercising its jurisdiction under section 6015(e)(1)(A) "to determine the appropriate relief available to" petitioner under section 6015(f), to consider matters raised at trial that petitioner did not raise with respondent's Appeals Office.  To consider such matters in determining whether respondent abused respondent's discretion in denying relief under section 6015(f) has the effect of vitiating the abuse-of-discretion standard that the Court held in Butler v. Commissioner, 114 T.C. 276, 292 (2000), and its progeny is

applicable where a taxpayer claims equitable relief under that section.  If a taxpayer seeking relief under section 6015(f) does not raise a matter with, or present sufficient information to, respondent's Appeals Office and if, after reasonable inquiry, respondent's Appeals Office has been unable to ascertain such matter or sufficient information that would support such relief, it would be improper for the Court to permit the taxpayer to present such matter or such information at trial.  Moreover, it would be illogical and inappropriate for the Court to conclude in such circumstances that respondent abused respondent's discretion in denying relief under section 6015(f).

With respect to the majority opinion's holding that petitioners are entitled to equitable relief under section 6015(f), the majority opinion purports to have applied an abuse-of-discretion standard in reaching that holding.  I do not believe that the majority opinion has in fact applied such a standard in the instant case.  Instead, the majority opinion, based upon evidence introduced at trial, has substituted the judgment of the majority for the judgment of respondent.  In so doing, the majority opinion offers no explanations about why the conclusions of respondent's Appeals Office as to the effect of the presence or the absence of certain factors set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447, constitute an abuse of discretion by respondent.

FOLEY, J., agrees with this dissenting opinion.