T.C. Memo. 2004-88

UNITED STATES TAX COURT

DENNIS BURBRIDGE AND ROSEMARY BURBRIDGE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8415-02L.              Filed March 26, 2004.

Dennis Burbridge, pro se.

<u>Robert Mopsick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Petitioners seek review of respondent's
notice of determination sustaining a notice of intent to levy
relating to petitioners' 1993 Federal income tax liability.

All section references are to the Internal Revenue Code in
effect for the year in issue.

Unless otherwise specified, references to petitioner in the singular are to petitioner Dennis Burbridge.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Cranford, New Jersey.

Prior to her death on May 27, 1993, petitioner's mother maintained with AIG Life Insurance Co. (AIG) a nonqualified single premium annuity. Petitioner was the beneficiary of the annuity.

In 1993, after the death of petitioner's mother, AIG distributed to petitioner the total $109,737 payable under the annuity. AIG reflected the total $109,737 distribution on a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., which Form 1099-R was mailed by AIG to petitioner and to respondent. On the Form 1099-R, $44,741 of the total distribution was shown as taxable income.

As of July 1995, respondent's records indicated that petitioner had not yet filed a Federal income tax return for 1993, and on July 5, 1995, respondent prepared for petitioner a substitute 1993 individual Federal income tax return (substitute

return),[1] on which respondent treated the above $44,741 shown on the Form 1099-R as taxable income to petitioner. On July 13, 1995, respondent mailed to petitioner a 30-day letter, Proposed Individual Income Tax Assessment, treating the $44,741 as taxable income to petitioner.

On July 27, 1995, in response to the above 30-day letter, petitioners untimely filed with respondent a Form 1040, U.S. Individual Income Tax Return, which petitioners purported to be their 1993 joint Federal income tax return. On such Form 1040, petitioners reflected petitioner's receipt of the total $109,737 annuity distribution, but petitioners also treated the total $109,737 as nontaxable income to petitioner. Also on the Form 1040, petitioners showed no tax due and claimed a refund of $377.[2]

On September 17, 1996, respondent mailed to petitioner a notice of deficiency for 1993, on which respondent determined an income tax deficiency against petitioner of $9,285 based on the taxability to petitioner of the $44,741 shown as taxable on the

---

[1] We make no finding as to whether the substitute return meets the requirements of sec. 6020(b). See McCarthy v. Commissioner, T.C. Memo. 1989-479 (citing Roat v. Commissioner, 847 F.2d 1379, 1381-1382 (9th Cir. 1988), affg. an Order of this Court).

[2] Petitioners' Form 1040 for 1993 has not been accepted by respondent as a valid tax return because, contrary to the Form 1099-R, it reflected no portion of the $109,737 annuity distribution as taxable income to petitioner.

Form 1099-R. Respondent's notice of deficiency was mailed only to, and received only by, petitioner.

Petitioner did not file a petition in this Court with regard to the above notice of deficiency. On February 24, 1997, respondent assessed the $9,285 income tax deficiency set forth in the notice of deficiency against both petitioners.

On June 16, 2000, respondent mailed to both petitioners a notice of intent to levy relating to the above 1993 tax assessment. On July 14, 2000, petitioner submitted to respondent a request for a section 6330 hearing.

On January 24, 2002, respondent's Appeals officer mailed to petitioners a letter notifying petitioners that respondent had received petitioners' request for a hearing. On January 29, 2002, petitioner contacted the Appeals officer and scheduled a hearing. On February 5, 2002, petitioner and the Appeals officer discussed the notice of intent to levy over the telephone (telephone conference).[3]

During the telephone conference, petitioner attempted to challenge the underlying tax liability by claiming that the total $109,737 annuity distribution had been included on his deceased

---

[3] Originally, the Appeals Office hearing was scheduled to be held in respondent's office on Feb. 5, 2002, but, on the morning of Feb. 5, petitioner called the Appeals officer and stated that he could not attend the hearing at respondent's office. The Appeals officer suggested that they could discuss the notice of intent to levy over the telephone, to which petitioner agreed and which they proceeded to do.

mother's Federal estate tax return that had been filed with respondent. During the telephone conference, respondent's Appeals officer informed petitioner that petitioner's underlying tax liability could not be challenged at the hearing because petitioner had received a notice of deficiency with regard thereto. In connection with the hearing, the Appeals officer also informed petitioner that respondent had no record indicating that a Federal estate tax return had been filed on behalf of petitioner's deceased mother, and petitioner failed to provide to the Appeals officer any proof that such a return had been filed.

Also in connection with the hearing, the Appeals officer reviewed petitioner's case file and verified that all applicable collection laws and administrative procedures were satisfied.

On April 2, 2002, respondent issued to petitioners the notice of determination sustaining the proposed levy.[4]

## OPINION

In the context of a section 6330 hearing, a challenge to the taxpayer's underlying tax liability will be considered only if the taxpayer did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the underlying tax liability.

---

[4] Respondent concedes that the assessment, the notice of intent to levy, and the notice of determination mailed to petitioners erroneously included petitioner Rosemary Burbridge.

Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180-181 (2000).

If the underlying tax liability is not at issue, we review respondent's notice of determination under an abuse of discretion standard. Sec. 6330(d)(1); Magana v. Commissioner, 118 T.C. 488, 493 (2002); Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Sego v. Commissioner, supra at 609-610; Goza v. Commissioner, supra at 181-182 (citing H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 755, 1020).

An abuse of discretion by respondent may be defined as an action that is unreasonable, arbitrary, or capricious, clearly unlawful, or lacking sound basis in law, taking into account all the facts and circumstances. See, e.g., Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979); Ewing v. Commissioner, 122 T.C. 32, 39-40 (2004); Swanson v. Commissioner, 121 T.C. 111, 119 (2003).

In a section 6330 hearing, respondent is required to verify whether the requirements of all applicable laws and administrative procedures have been met, to consider issues raised by a taxpayer, and to determine whether the proposed collection action is more intrusive than necessary. Sec. 6330(c)(3).

Petitioner primarily argues that respondent erred by not allowing petitioner to challenge the merits of the underlying tax liability and by not conducting a face-to-face hearing.

As stated, however, because petitioner received a notice of deficiency, we do not have jurisdiction herein to consider petitioner's underlying tax liability.[5]  Sec. 6330(d)(1).

The February 5, 2002, telephone conference between petitioner and respondent's Appeals officer was agreed to by petitioner and constituted an appropriate hearing for purposes of section 6330(b)(1).  See Day v. Commissioner, T.C. Memo. 2004-30; Leineweber v. Commissioner, T.C. Memo. 2004-17; Dorra v. Commissioner, T.C. Memo. 2004-16; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.

During the hearing, petitioner failed to suggest any collection alternatives or to raise any other valid concerns regarding the notice of intent to levy.

Respondent properly verified that the requirements of applicable law and administrative procedures were met, and

---

[5] Petitioner argues that, if the $109,737 annuity distribution was properly included on petitioner's deceased mother's Federal estate tax return under sec. 2039(a), no portion of the annuity distribution would be taxable to petitioner as the beneficiary of the annuity.  We note that the validity of this argument depends on a number of facts not in evidence, nor relevant, for purposes of the issue in this collection case.  If petitioner believes that he can produce evidence that establishes that the $109,737 annuity distribution was taxable to the estate of petitioner's deceased mother, petitioner's remedy, if any, would seem to lie in a claim for refund after full payment.

respondent balanced the need for efficient collection of taxes with the legitimate concern of petitioner that the collection action be no more intrusive than necessary.

Petitioner makes various other arguments, equally without merit.

Respondent did not abuse his discretion in sustaining the notice of intent to levy as to petitioner.

To reflect the foregoing,

<u>An order dismissing petitioner Rosemary Burbridge will be issued, and decision will be entered for respondent as to petitioner Dennis Burbridge</u>.