T.C. Memo. 2004-183

UNITED STATES TAX COURT

NANCY M. O'NEILL, Petitioner, AND ROBERT B. WOLLOW, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17375-02.             Filed August 11, 2004.

Nancy M. O'Neill, pro se.

Robert B. Wollow, pro se.

<u>Thomas M. Rohall</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>: Pursuant to section 6015(e) and Rule 321,[1]

petitioner seeks review of respondent's determination that she is

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

not entitled to relief from joint and several liability on her 1998 joint return. The issue for decision is whether respondent's denial of relief under section 6015(f) was an abuse of discretion. On January 13, 2003, Robert B. Wollow (Mr. Wollow), petitioner's former spouse, filed a notice of intervention with the Court, challenging petitioner's entitlement to relief from joint and several liability. See Rule 325.

## FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Santa Rosa, California, when she filed her petition in this case.

### Background

Petitioner and Mr. Wollow became legally separated in December 1997 and divorced in February 1999. Petitioner has a bachelor's degree in business administration. During 1998, after her employment as the director of human resources for a mortgage banking company was terminated, petitioner was employed at a lumber company for approximately 1 month. Thereafter, in 1998, petitioner worked as a human resources manager for a software company. Meanwhile, Mr. Wollow was employed as an airline pilot.

### Petitioner's Bankruptcy and the 1998 Joint Income Tax Return

On April 7, 1999, petitioner filed a chapter 7 bankruptcy petition with the United States Bankruptcy Court for the Northern

District of California (the bankruptcy court).  At the time of petitioner's bankruptcy proceeding, Mr. Wollow was involved in his own bankruptcy proceeding.  On July 7, 1999, the bankruptcy court granted petitioner a discharge.

In April 1999, Mr. Wollow informed petitioner that, according to his preliminary calculations, they owed income taxes for 1998 (the 1998 joint liability).  Petitioner offered to pay the 1998 joint liability out of her severance pay from the mortgage banking company.  At the suggestion of Mr. Wollow, however, petitioner ultimately agreed that her individual retirement account (IRA) would be seized by the bankruptcy court and used to pay the 1998 joint liability.

On August 15, 1999, petitioner and Mr. Wollow timely filed a joint Federal income tax return for 1998 (the joint return).  On the joint return, petitioner and Mr. Wollow reported wages in the amounts of approximately $140,000 and $145,000, respectively, and Federal income tax withholding in the amounts of $21,615 and $26,547, respectively.  The joint return showed income tax due in the amount of $5,294.[2]  Instead of submitting a payment with the joint return, petitioner and Mr. Wollow attached a letter in which they advised respondent of their respective bankruptcy

---

[2]The amount of tax shown as due on the joint return was also attributable to IRA distributions that petitioner and Mr. Wollow received in the amounts of $2,708 and $1,877, respectively.

proceedings and informed respondent that the bankruptcy trustee would retain "certain IRA monies" to pay the 1998 joint liability.

Payment of the 1998 Joint Liability

On petitioner's separately filed 1999 Federal income tax return, petitioner reported total wages in the amount of $80,100 and alimony in the amount of $29,700. The return showed a refund due in the amount of $5,021. On September 4, 2000, respondent applied petitioner's 1999 refund to offset the 1998 joint liability. At this time, petitioner's IRA remained exempted from the bankruptcy estate. Petitioner did not submit signed instructions for liquidating the IRA and allocating the proceeds until January 2001, several months after respondent applied petitioner's 1999 refund to the 1998 joint liability.

Petitioner's Innocent Spouse Claim

On July 2, 2002, petitioner timely filed with respondent Form 8857, Request for Innocent Spouse Relief. In her Form 8857, petitioner asserted that "Since the 1998 income tax liability is a community liability, it is inequitable to apply [the] taxpayer's separate property to its payment. Community assets which are still available in the bankruptcy estate should instead be used." In a final notice dated August 14, 2002, respondent

denied petitioner's request for innocent spouse relief.  On
November 6, 2002, petitioner filed a petition with this Court
contesting respondent's determination.

OPINION

In general, spouses who file joint Federal income tax
returns are jointly and severally liable for the full amount of
the tax liability.  Sec. 6013(d)(3); Butler v. Commissioner, 114
T.C. 276, 282 (2000).  Pursuant to section 6015, however, a
spouse may seek relief from joint and several liability.[3]

One form of relief from joint and several liability on a
joint return is equitable relief under section 6015(f).  Section
6015(f) provides:

>     SEC. 6015(f).  Equitable Relief.--Under Procedures
> Prescribed by the Secretary, if--
>
>     (1) taking into account all the facts and
>     circumstances, it is inequitable to hold the individual
>     liable for any unpaid tax or any deficiency (or any
>     portion of either); and
>
>     (2) relief is not available to such individual
>     under subsection (b) or (c),

the Secretary may relieve such individual of such liability.
The Commissioner uses guidelines prescribed in Rev. Proc. 2000-
15, 2000-1 C.B. 447, to determine whether a taxpayer qualifies

---

[3]Sec. 6015 applies to tax liabilities arising after July 22, 1998, and to tax liabilities arising on or before July 22, 1998, but remaining unpaid as of such date.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740.

for relief from joint and several liability under section 6015(f).[4]  We review the Commissioner's denial of relief under section 6015(f) for abuse of discretion.  See <u>Washington v. Commissioner</u>, 120 T.C. 137, 146 (2003); <u>Butler v. Commissioner</u>, <u>supra</u> at 292.

Before the Commissioner will consider a taxpayer's request for relief under section 6015(f), the taxpayer must satisfy seven threshold conditions listed in Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448.  Respondent concedes that petitioner satisfies these conditions.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, provides that equitable relief may be granted under section 6015(f) if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable.  In considering a request for relief, certain factors weigh in favor of granting relief, whereas other factors weigh against granting relief.  See <u>id.</u>  No single factor is determinative in any particular case, and all factors are to be considered and weighed appropriately.  See <u>Washington v. Commissioner</u>, <u>supra</u> at 148; <u>Jonson v. Commissioner</u>, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th

_____

[4]On Aug. 11, 2003, the Commissioner issued Rev. Proc. 2003-61, 2003-32 I.R.B. 296, which supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, for which no preliminary determination letter has been issued as of that date.

Cir. 2003). Moreover, the list of factors is not intended to be exhaustive. See Washington v. Commissioner, supra at 148.

The following six factors weigh in favor of granting relief for the liability: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse would suffer economic hardship if relief is denied; (3) the nonrequesting spouse abused the requesting spouse; (4) the requesting spouse did not know or have reason to know that the liability would not be paid; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability; and (6) the liability is solely attributable to the nonrequesting spouse. See Rev. Proc. 2000-15, sec. 4.03(1), 2000-1 C.B. at 448-449. On the other hand, the following six factors weigh against granting relief for the liability: (1) The unpaid liability is attributable to the requesting spouse; (2) the requesting spouse knew or had reason to know when she signed the return that the reported liability would be unpaid; (3) the requesting spouse significantly benefited (beyond the normal support) from the unpaid liability; (4) the requesting spouse will not experience economic hardship if relief is denied; (5) the requesting spouse has not made a good-faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse had a legal obligation pursuant to a divorce

decree or agreement to pay the liability.  See Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449.  Our analysis of the factors and the parties' arguments follows.

Marital Status

Respondent concedes that this factor weighs in favor of granting relief.

Economic Hardship

At trial, petitioner alleged that, in the past, she had experienced economic hardship attributable to the 1998 joint liability,[5] but petitioner offered no financial information in support of her allegation.  Petitioner has not alleged that she is currently experiencing, or would experience, economic hardship if she is not relieved of the 1998 joint liability.  In the absence of any evidence of economic hardship, we must conclude that this factor weighs against granting relief.

Abuse

Petitioner has not alleged that Mr. Wollow abused her. Consequently, this factor is neutral.

---

[5]According to petitioner, during 2000, when respondent applied petitioner's 1999 refund to offset the 1998 joint liability, petitioner was a single parent with one daughter in her custody during 70 percent of the year and another daughter in college.  Petitioner testified that, after paying the bills, "not too much [was] left over."

No Knowledge or Reason To Know

Petitioner knew that the tax liability shown on the 1998 joint return would not be paid when the return was filed. Petitioner contends that, when she signed the joint return, she thought that her IRA would be seized by the bankruptcy court and used to pay the 1998 joint liability. According to petitioner, the reason that she and Mr. Wollow requested an extension for filing the joint return was to give the bankruptcy court more time to seize and distribute her IRA.

We do not see how petitioner reasonably could have expected that her IRA would be used to satisfy the 1998 joint liability when she had not authorized the IRA's liquidation and distribution. Moreover, because petitioner agreed to pay the 1998 joint liability with the proceeds from her IRA, petitioner knew that Mr. Wollow would not pay it. This factor strongly weighs against granting relief. See Washington v. Commissioner, supra at 150.

The Spouses' Legal Obligations

At trial, petitioner testified that, pursuant to the divorce decree, both she and Mr. Wollow were "responsible for the joint filed return and any community debts to be paid." Petitioner agrees, therefore, that under the decree she and Mr. Wollow share the legal obligation for paying the 1998 joint liability. Accordingly, this factor is neutral.

Significant Benefit

The record does not indicate that petitioner benefited beyond normal support from not paying the 1998 joint liability. As articulated in Ewing v. Commissioner, 122 T.C. 32, 45 (2004), this factor weighs in favor of granting relief.

Source of the Liability and Noncompliance With Federal Income Tax Laws

These two factors are neutral. First, the record reflects that the 1998 joint liability was attributable to both petitioner and Mr. Wollow. Second, there is no evidence that petitioner has not made a good-faith effort to comply with the Federal income tax laws since 1998.

Conclusion

Petitioner's main contention in this proceeding has been that, because the 1998 joint liability was ultimately paid from her separate property rather than from her and Mr. Wollow's community property, she is entitled to equitable relief. Although we understand petitioner's frustration with the apparent lack of fairness, such circumstances alone are not grounds for relief under section 6015(f). Petitioner knew when the 1998 joint return was filed that she had an obligation to pay the 1998 joint liability and that some of her assets would be used to pay it. The fact that respondent applied her 1999 tax refund to the 1998 tax liability instead of waiting for the bankruptcy court to

satisfy the liability with her IRA is not sufficient to qualify petitioner for relief under section 6015(f).

After considering all of the facts and circumstances, we conclude that respondent's decision to deny relief from joint and several liability was not an abuse of discretion.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>