T.C. Summary Opinion 2005-25

UNITED STATES TAX COURT

DAVID RAY AND LINDA LEE HARRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6711-03S.              Filed March 3, 2005.

David Ray and Linda Lee Harris, pro sese.

<u>Albert B. Kerkhove</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code.

The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section

6320 and/or 6330 (the notice). Petitioners seek review of the determination to proceed with collection of their tax liabilities for 1994, 1995, 1996, 1997, and 1999. The issue for decision is whether respondent may proceed with collection action as determined in the notice.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits thereto are incorporated herein by this reference. Petitioners resided in Des Moines, Iowa, on the date the petition was filed in this case. Petitioners appeared before the Court; however, only David Ray Harris (petitioner) testified.

## Background

Between 1987 and 1990, petitioners started experiencing financial difficulties. During this time, petitioners put their house in La Porte City, Iowa, up for sale. However, after the house did not sell as petitioners had expected, their mortgage on the house was foreclosed. Petitioners explained their situation to the Veterans' Administration, which had guaranteed the mortgage on the house. The Veterans' Administration forgave petitioners' indebtedness on the mortgage in the amount of $27,500. The Veterans' Administration also informed petitioners that such forgiveness of debt can be considered income under the Internal Revenue Code. Therefore, petitioners reported that income on their 1990 Federal income tax return.

Petitioners' 1990 Federal income tax return reported tax of $7,462, withholding credits of $1,068, and a balance due of $6,394. Petitioners made a subsequent payment of $1,936 which reduced their balance due to $4,458. On May 4, 1992, respondent assessed the tax reported by petitioners on their 1990 return, along with penalties and interest. However, petitioners failed to pay the amount due.

Petitioners' 1991 Federal income tax return reported tax of $1,905, withholding credits of $436, an earned income credit of $203, and a balance due of $1,266. On June 1, 1992, respondent assessed the tax reported by petitioners on their 1991 return, along with interest. However, petitioners failed to pay the amount due.

Petitioners' 1992 Federal income tax return reported tax of $2,137, withholding credits of $705, and a balance due of $1,432. On June 7, 1993, respondent assessed the tax reported by petitioners in their 1992 return, along with penalties and interest. However, petitioners failed to pay the amount due.

During 1993, petitioners and respondent agreed to an installment agreement with regard to taxable years 1990, 1991, and 1992. This agreement required petitioners to make monthly installment payments in an attempt to pay off their tax liabilities from 1990, 1991, and 1992. In 1993, petitioners made two subsequent payments of $100 under the installment agreement.

Petitioners' 1993 Federal income tax return reported tax of $1,781, withholding credits of $1,030, and a balance due of $751. On July 25, 1994, respondent assessed the tax reported by petitioners in their 1993 return, along with penalties and interest. However, petitioners failed to pay the amount due.

Petitioners timely filed their joint Federal income tax returns for the years 1994, 1995, 1996, 1997, and 1999 with the Internal Revenue Service Center in Kansas City, Missouri.

Petitioners' 1994 Federal income tax return reported tax of $4,184, withholding credits of $87, and a balance due of $4,097. On June 5, 1995, respondent assessed the tax reported by petitioners in their 1994 return, along with penalties and interest. Also on June 5, 1995, notice and demand for payment of the 1994 income tax liability was sent to petitioners. However, petitioners failed to pay the amount due.

In 1995, petitioners again agreed to an installment agreement with respondent in regard to taxable years 1990, 1991, 1992, 1993, and 1994. This agreement required petitioners to make monthly installment payments of $200 in an attempt to pay off their tax liabilities from 1990, 1991, 1992, 1993, and 1994. Throughout 1996, 1997, and 1998, petitioners made several payments of $200 in accordance with the 1995 installment agreement. One payment recorded on petitioners' transcript of account for taxable year 1990 shows a payment of $3,200 made on

September 17, 1997.[1]  However, these payments stopped in 1998 when petitioners again ran into severe financial difficulty.

Petitioners' 1995 Federal income tax return reported tax of $4,494, withholding credits of $805, and a balance due of $3,689. On June 3, 1996, respondent assessed the tax reported by petitioners in their 1995 return, along with penalties and interest.  Also on June 3, 1996, notice and demand for payment of the 1995 income tax liability was sent to petitioners.  However, petitioners failed to pay the amount due.

Petitioners' 1996 Federal income tax return reported tax of $5,370, withholding credits of $2,242, and a balance due of $3,128.  On May 26, 1997, respondent assessed the tax reported by petitioners in their 1996 return, along with penalties and interest.  Also on May 26, 1997, notice and demand for payment of the 1996 income tax liability was sent to petitioners.  However, petitioners failed to pay the amount due.

Petitioners' 1997 Federal income tax return reported tax of $3,448, withholding credits of $1,081, and a balance due of $2,367.  On September 7, 1998, respondent assessed the tax reported by petitioners in their 1997 return, along with

---

[1]Petitioners claim that this $3,200 payment was made to pay off their 1996 tax liability.  However, petitioner did not present any evidence that the payment was earmarked for the 1996 tax liability.  In fact, petitioners have not made any attempt to get a copy of the check or any other evidence that would substantiate their claim.

penalties and interest.  Also on September 7, 1998, notice and demand for payment of the 1997 income tax liability was sent to petitioners.  However, petitioners failed to pay the amount due.

Petitioners' 1999 Federal income tax return reported tax of $951, withholding credits of $746, and a balance due of $205.  On May 22, 2000, respondent assessed the tax reported by petitioners in their 1999 return, along with penalties and interest.  Also on May 22, 2000, notice and demand for payment of the 1999 income tax liability was sent to petitioners.  However, petitioners failed to pay the amount due.

In 1999, petitioners filed Form 1040X, Amended U.S. Individual Income Tax Return, for taxable year 1990 in which they claimed their tax liability should be reduced.  Respondent accepted the Form 1040X as filed.  In other words, respondent agreed with petitioners that their tax liability for 1990 should be reduced to the amount reported on the Form 1040X, $3,814.  As a result, no controversy exists as to the amount of petitioners' 1990 income tax liability.

Respondent's acceptance of the Form 1040X changed the application of payments petitioners had previously made on their tax liabilities.  Because assessment of petitioners' excess 1990 tax liability, related penalties, and interest was abated, petitioners' prior payments on the original 1990 tax liability, penalties, and interest were credited to petitioners' other tax

liabilities. The transfer of these previous payments satisfied petitioners' tax liabilities for 1991, 1992, and 1993. Therefore, the only remaining liabilities outstanding and at issue in this case are for 1994, 1995, 1996, 1997, and 1999.

On November 11, 2000, a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing was issued to petitioners with respect to their unpaid 1994, 1995, 1996, 1997, and 1999 income tax liabilities. On December 8, 2000, petitioners timely filed a Form 12153, Request for a Collection Due Process Hearing. In their request for a hearing, petitioners questioned whether payments they previously made had been properly applied against their 1994, 1995, 1996, 1997, and 1999 income tax liabilities.

On March 4, 2001, the Internal Revenue Service in Kansas City, Missouri, sent a letter to petitioners advising that their request for a collection due process hearing (CDP hearing) had been received and that they would be contacted. By letter dated April 13, 2001, petitioners were sent account summaries for their 1994, 1995, 1996, 1997, and 1999 income tax accounts.

Petitioners' hearing request was assigned to an Appeals officer. In a letter dated December 6, 2001, the Appeals officer advised petitioners that he had scheduled a hearing for December 28, 2001, in Des Moines, Iowa.

By letter dated December 27, 2001, petitioners advised the Appeals officer that they disputed that they had been given credit for all of the payments which they had made toward their 1990 income tax liability. On December 28, 2001, the Appeals officer held a CDP hearing with petitioners. Additionally, on December 28, 2001, the Appeals officer provided petitioners with a spreadsheet showing where all of their payments toward their 1990 tax liability had been applied.

On or about February 8, 2002, petitioners filed a Form 656, Offer in Compromise (OIC), based upon doubt as to liability. In their OIC, petitioners again contended that they were not properly credited for the payments they had made and that they owed less than the amounts shown by the Internal Revenue Service. By letter dated March 25, 2002, the Internal Revenue Service in Milwaukee, Wisconsin, acknowledged that petitioners' OIC had been received.

Petitioners were advised in a letter dated October 15, 2002, that their OIC had been transferred to the Appeals officer who held their CDP hearing. The Appeals officer subsequently sent petitioners a letter advising that he had received their doubt as to liability OIC. On the basis of the determination that petitioners had been credited for all payments, the Appeals officer advised petitioners that he was rejecting their OIC. The

Appeals officer then requested that petitioners call him to discuss payment options.

On December 2, 2002, the Appeals officer received a letter from petitioners again disputing their liabilities. On December 4, 2002, the Appeals officer formally rejected petitioners' OIC on the basis that petitioners had been properly credited for their payments. By letter dated January 31, 2003, the Appeals officer advised petitioners that their OIC had been rejected because the tax was legally due. The Appeals officer determined that since the tax was correct and since petitioners had failed to propose any collection alternatives, respondent's proposed levy action was appropriate.

On January 31, 2003, respondent mailed the notice. Petitioners timely filed a Petition for Lien or Levy Action Under Code Section 6320(c) or 6330(d) challenging respondent's determination.

Discussion

I.   Section 6330

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, the Secretary is authorized to collect such tax by levy upon property belonging to such person. Pursuant to section 6331(d), the Secretary is required to give the taxpayer notice of his intent to levy and within that notice

must describe the administrative review available to the taxpayer, before proceeding with the levy. See also sec. 6330(a).

Section 6330 generally provides that the Commissioner cannot proceed with collection by levy until the person has been given notice and opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination. See Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179-180 (2000).

Section 6330(b) describes the administrative review process, providing that a taxpayer can request an Appeals hearing with regard to a levy notice. At the Appeals hearing, the taxpayer may raise certain matters set forth in section 6330(c)(2), which provides, in pertinent part:

> SEC. 6330(c). Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
>      *    *    *    *    *    *    *
>
> (2) Issues at hearing.--
>
>     (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
>         (i) appropriate spousal defenses;
>
>         (ii) challenges to the appropriateness of collection actions; and
>
>         (iii) offers of collection alternatives, which may include the posting of a bond, the

substitution of other assets, an installment agreement, or an offer-in-compromise.

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Pursuant to section 6330(d)(1), within 30 days of the issuance of the notice of determination, the taxpayer may appeal that determination to this Court if we would normally have jurisdiction over the underlying tax liability. Moore v. Commissioner, 114 T.C. 171, 175 (2000).

## II. Standard of Review

A central question in the present case is the standard of review to be applied. Although section 6330 does not prescribe the standard of review that the Court is to apply in reviewing the Commissioner's administrative determinations, we have stated that where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Where the validity of the underlying tax liability is not properly at issue, however, the Court will review the Commissioner's administrative determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, supra at 181-182.

Generally, under section 6330(c)(2)(B), issues that are reviewed de novo include those such as a redetermination of the

tax on which the Commissioner based the assessment, provided that the taxpayer did not have an opportunity to seek a redetermination before assessment. See, e.g., Landry v. Commissioner, 116 T.C. 60, 62 (2001) ("Because the validity of the underlying tax liability, i.e., the amount unpaid after application of credits to which petitioner is entitled, is properly at issue, we review respondent's determination de novo."). Whether the Commissioner's assessment was made within the limitation period also constitutes a challenge to the underlying tax liability. Hoffman v. Commissioner, 119 T.C. 140, 145 (2002).

Under an abuse of discretion standard, "we do not interfere unless the Commissioner's determination is arbitrary, capricious, clearly unlawful, or without sound basis in fact or law." Ewing v. Commissioner, 122 T.C. 32, 39 (2004); see also Woodral v. Commissioner, 112 T.C. 19, 23 (1999). Review for abuse of discretion includes "any relevant issue relating to the unpaid tax or the proposed levy", including "challenges to the appropriateness of collection actions" and "offers of collection alternatives" such as offers in compromise. Sec. 6330(c)(2)(A). Questions about the appropriateness of the collection action include whether it is proper for the Commissioner to proceed with the collection action as determined in the notice of determination, and whether the type and/or method of collection

chosen by the Commissioner is appropriate. See, e.g., <u>Swanson v.</u>
<u>Commissioner</u>, 121 T.C. 111, 119 (2003) (challenge to
appropriateness of collection reviewed for abuse of discretion).

Petitioners framed their dispute with respondent as a
dispute as to liability.[2]  However, the stipulated facts,
exhibits, and petitioner's testimony at trial indicate that this
is a case where petitioners dispute the application of
transferred payments and the assessment of statutory interest and
penalties.

Because of the ambiguity of petitioners' argument, we will
consider the argument as both a dispute as to the underlying
liability and as a challenge to the appropriateness of
respondent's collection actions.

A.    <u>Underlying Liability</u>

Considering petitioners' argument as a dispute as to the
underlying tax liability, we review petitioners' liability de
novo.

Petitioners do not in any of their papers or pleadings
include any specific calculations of disputed transferred
payments or disputed assessments of statutory interest and

---

[2]Petitioners argue first that their previous payments and
abated liabilities were not correctly applied to their subsequent
taxable years' liabilities.  Petitioners argue second that their
payment of $3,200 made in 1997 was earmarked for payment for
their 1996 taxable year liability.  Finally, petitioners argue
that the penalties and interest assessed as to their unpaid
liabilities are incorrect and "exorbitantly high."

penalties.  Petitioners simply set forth unsubstantiated arguments in support of their claim that the misapplication of transferred payments has distorted the assessment of statutory interest, penalties, and their subsequent tax year liabilities.

However, respondent has submitted into evidence account summaries for petitioners' 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998, and 1999 income tax accounts.  Respondent has also submitted into evidence an Internal Revenue Service spreadsheet that establishes the application of transferred payments among petitioners' accounts.

Upon the basis of the record, we find that respondent correctly determined that all of the unpaid tax liabilities, including interest and penalties, are correct.

B.  Collection Action

Considering petitioners' argument as a challenge to the application of payments in a collection action or as a challenge to the rejection of petitioners' OIC, we review this issue under an abuse of discretion standard.  See Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. at 181-182; see also, e.g., Swanson v. Commissioner, supra.

As stated previously, under an abuse of discretion standard, we do not "interfere unless the Commissioner's determination is arbitrary, capricious, clearly unlawful, or without sound basis in fact or law."  Ewing v. Commissioner, supra at 39.

Petitioners have not introduced any evidence as to specific mistakes or irregularities in respondent's assessment procedure or determination process. Petitioners introduced no evidence at trial to show that respondent's determination was "arbitrary, capricious, clearly unlawful or without sound basis in fact or law." Id. Therefore, we conclude that respondent did not abuse his discretion, and we sustain respondent's determination.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.
