T.C. Summary Opinion 2005-95

UNITED STATES TAX COURT

MYRTLE JEAN CLARK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19081-03S.          Filed July 20, 2005.

Myrtle Jean Clark, pro se.

<u>John W. Strate</u>, for respondent.

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered
is not reviewable by any other court, and this opinion should not
be cited as authority.  Petitioner seeks a review under section

---

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the years at
issue.

6330(d) of respondent's decision to proceed with collection of petitioner's Federal income tax liabilities for the 1991, 1992, and 1993 tax years.

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are made a part hereof. Petitioner's legal residence at the time the petition was filed was Bakersfield, California.

Petitioner was married to Zack Clark (Mr. Clark). Mr. Clark died on October 25, 2001.[2] During the years in issue, petitioner was a housewife. Mr. Clark was self-employed as a mechanic in 1991 and operated a personnel and property management business during 1991, 1992, and 1993.

Petitioner and Mr. Clark filed a joint Federal income tax return for 1991 on July 3, 1996. The return showed a tax of $2,938. This amount was not paid at the time of filing. Petitioner and Mr. Clark filed a joint Federal income tax return for 1992 on April 15, 1996. That return showed a tax of $9,141, which was also not paid at the time of filing. Petitioner and Mr. Clark filed a joint Federal income tax return for 1993 on April 16, 1996. That return showed a tax of $6,798, which also was not paid at the time of filing.

---

[2]Petitioner and Mr. Clark were divorced in 1984 but remarried about 1 year later. For purposes of this proceeding, however, petitioner was married to Mr. Clark during the years in issue. Therefore, the divorce is not a factor to be considered in deciding this case.

As to the 1991 taxes, overpayment credits from subsequent years were applied to the balance due in 1997, 1998, and 1999. On December 13, 2000, "intent to levy collection", "due process notice", and "levy notice" (collection notices) were issued to petitioner and Mr. Clark for each of the years at issue. These notices were labeled as "refused/unclaimed" on December 30, 2000. Copies of the notices were not presented at trial. Petitioner claims that she never knew of or saw these notices.

After Mr. Clark died on October 25, 2001, petitioner became aware that she could request relief from joint liability in connection with the tax liabilities described. On May 21, 2003, petitioner filed Form 8857, Request for Innocent Spouse Relief, and an attached Form 12510, Questionnaire for Requesting Spouse, which were received by respondent on May 30, 2003.

In a notice of determination for 1991 and a preliminary notice of determination for 1992 and 1993, respondent denied and proposed to deny, respectively, petitioner's request for relief from joint liability for her Federal income taxes under section 6015(b), (c), and (f).

On October 24, 2003, respondent mailed to petitioner a final notice denying petitioner's request for innocent spouse relief under section 6015(b), (c), and (f) for 1991. The notice stated that the request was denied because it was received "more than two years after the date * * * [the Internal Revenue Service]

began collection activity. * * * The date of the collection activity on your account, after the enactment of IRC Section 6015 was May 3, 1999." On January 29, 2004, respondent mailed to petitioner a preliminary determination proposing to deny petitioner's request for innocent spouse relief under section 6015(b), (c), and (f) for 1992 for the reason the request was received "more than two years after the date * * * [the Internal Revenue Service] began collection activity. * * * The date of the first collection activity on your account, after the enactment of IRC section 6015 was January 22, 2001."[3]

Petitioner filed an amended petition with this Court for 1991, 1992, and 1993 on January 5, 2004, appealing respondent's determinations. The sole issue for decision is whether denial of relief for 1991, 1992, and 1993 was an abuse of respondent's discretion.

Where the underlying tax liability is not at issue, as in this case, the Court reviews the determination regarding collection actions on the basis of whether there was an abuse of discretion by respondent. Sego v. Commissioner, 114 T.C. 604, 610 (2000). An abuse of discretion is defined as any action that

_____

[3]Though the preliminary notice for 1992 and 1993 stated that the first collection activity on that account was Jan. 22, 2001, as opposed to Dec. 13, 2000, this discrepancy is insignificant to the issue because May 21, 2003, is still more than 2 years after Jan. 21, 2001. Respondent contends that Dec. 13, 2001, the date the collection notices were sent, is the date of the first collection activity on each of the accounts.

is unreasonable, arbitrary, or capricious, or lacking sound basis in law, taking into account all the facts and circumstances. Ewing v. Commissioner, 122 T.C. 32, 39 (2004); Jonson v. Commissioner, 118 T.C. 106, 125 (2002). The issue to be decided here is whether the denial of relief from joint liability to petitioner for her 1991, 1992, and 1993 Federal income taxes under section 6015 was an abuse of discretion.

Generally, spouses filing joint Federal income tax returns are jointly and severally liable for all taxes due. Sec. 6013(d)(3). Under certain circumstances, however, section 6015 provides relief from this general rule.[4] Section 6015 applies to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, but remaining unpaid as of such date. Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201(g), 112 Stat. 740.

Section 6015 provides three avenues for relief to a taxpayer who has filed a joint return: (1) Section 6015(b) provides relief with respect to understatements of tax attributable to certain erroneous items on the return; (2) section 6015(c)

---

[4]Sec. 6015 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 734. Prior to the enactment of sec. 6015, relief from the imposition of joint and several liability for spouses filing joint returns was available under sec. 6013(e).

provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced; and (3) section 6015(f) more broadly confers on the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c).

A requisite to granting relief under section 6015(b) or (c) is the existence of a tax deficiency.  Sec. 6015(b)(1)(B) and (c)(1); Block v. Commissioner, 120 T.C. 62, 66 (2003).  Therefore, if there is no deficiency for the year for which relief is sought, relief from joint and several liability is not available under section 6015(b) or (c).  See Washington v. Commissioner, 120 T.C. 137, 147-148 (2003); see also Block v. Commissioner, supra.  In this case, for the 3 years in question, there are underpayments of taxes arising from filed income tax returns on which the taxes shown on those returns were not paid.  There are no deficiencies arising from the issuance by respondent of notices of deficiencies.  Therefore, because there are no tax deficiencies, petitioner is not entitled to relief under section 6015(b) or (c).  To that extent, therefore, respondent is sustained.  However, petitioner falls under the equitable relief provision of section 6015(f).  Section 6015(f) provides:

> SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual

liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

To request equitable relief under section 6015(f), a requesting spouse must file Form 8857 or other similar statement with the IRS no later than 2 years from the date of the first collection activity against the requesting spouse after July 22, 1998, with respect to the joint tax liability. Sec. 1.6015-5(b)(1), Income Tax Regs.[5] One example of "collection activity", as defined in section 1.6015-5(b)(2)(i), Income Tax Regs., is a section 6330 notice, which is a notice sent providing taxpayers notice of the IRS's intent to levy and of a right to a section 6330 hearing. Sec. 1.6015-5(b)(2)(ii), Income Tax Regs.

In addition to the requirement that a section 6330 notice be sent to the taxpayer, section 3501 of the RRA 1998 requires that collection-related notices sent by the IRS inform individuals subject to joint liability of their rights to relief under section 6015. RRA 1998 sec. 3501(b), 112 Stat. 770; see McGee v. Commissioner, 123 T.C. 314, 317 (2004); see also Nelson v. Commissioner, T.C. Memo. 2005-9. In holding that it was an abuse

---

[5]Sec. 1.6015-5(b)(1), Income Tax Regs., is applicable for all elections under sec. 6015 filed on or after July 18, 2002. Sec. 1.6015-9, Income Tax Regs.

of discretion for the Commissioner to deny a request for relief under section 6015(f) by applying the 2-year statute of limitations,[6] the Court in McGee stated:

> It would be inequitable if respondent could prevent review of a request for relief under section 6015(f) by failing to inform petitioner of her right to relief in defiance of a congressional mandate.  Such a result would be contrary to the very purpose of section 6015(f), which is to relieve inequitable situations involving joint liabilities. * * *

McGee v. Commissioner, supra at 319; see also Nelson v. Commissioner, supra.

Respondent contends that the date of the first collection activity in each of the tax years at issue was the date collection notices were mailed to petitioner and Mr. Clark on December 13, 2000.  The collection notices are not in the administrative record of the IRS and were not presented as evidence at trial.  There is no evidence that the collection notices informed petitioner of her right to apply for relief

---

[6]In McGee, the Court decided that applying the statute of limitations imposed by Rev. Proc. 2000-15, 2000-1 C.B. 447, was an abuse of discretion.  McGee v. Commissioner, 123 T.C. 314, 319 (2004).  Though the statute of limitations applied in this case was imposed by sec. 1.6015-5, Income Tax Regs., and not by Rev. Proc. 2000-15, supra, the interpretation remains the same.  Any other interpretation would be in conflict with the public law. Additionally, it should be noted that Rev. Proc. 2003-61, 2003-2 C.B. 296, not Rev. Proc. 2000-15, 2000-1 C.B. 447, applies to tax years 1992 and 1993 in this case because Rev. Proc. 2003-61, supra, supersedes Rev. Proc. 2000-15, supra, for requests still pending on Nov. 1, 2003, for which no preliminary determination letter had been issued as of Nov. 1, 2003.  The notice of preliminary determination for 1992 and 1993 was mailed to petitioner on Jan. 29, 2004.

under section 6015(f). According to the testimony of petitioner, she was not aware of her right to request relief until after the death of Mr. Clark on October 25, 2001.

Not sending the notice of rights resulted in petitioner's failure to request relief under section 6015(f) within 2 years after the first collection activity because she did not know of these rights. Therefore, on this record, there was an abuse of discretion by respondent in denying petitioner's request for relief under section 6015(f) on the ground that the 2-year limitation period applies.

Respondent acknowledged at trial that there was no analysis or evaluation of the facts and circumstances of petitioner's case in denying her request for relief under section 6015(f). The courts have held that, in reviewing administrative actions, a case should be remanded for further factual determinations deemed necessary to complete an inadequate administrative record or to make one adequate. See Natl. Nutritional Foods Association v. Weinberger, 512 F.2d 688, 701 (2d Cir. 1975); see also Camp v. Pitts, 411 U.S. 138, 143 (1973); Asarco, Inc. v. EPA, 616 F.2d 1153, 1160 (9th Cir. 1980); Friday v. Commissioner, 124 T.C. ____ (2005). Therefore, because the Court holds that petitioner filed her application for relief timely, and, because the administrative record is not adequate, the case will be remanded to respondent for further consideration.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.